UNITED STATES of America,
Appellee,

v.

Augusto Tarquino Arias FLORES,
Defendant-Appellant.

No. 72–1175.

United States Court of Appeals,
First Circuit.

Heard Feb. 9, 1973.

Decided April 13, 1973.

Arturo Aponte Pares, San Juan, P. R., by appointment of the Court, for appellant.

Jorge Rios Torres, Asst. U. S. Atty., with whom Julio Morales Sanchez, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McEN-TEE and CAMPBELL, Circuit Judges.

CAMPBELL, Circuit Judge.

Appellant Arias Flores appeals from a conviction of importing cocaine in violation of 21 U.S.C. § 174,[1] contending that the cocaine should have been suppressed as the product of a search violative of the Fourth Amendment.

On March 24, 1970, appellant, a resident of Venezuela, arrived at San Juan International Airport, Puerto Rico, after a flight from Venezuela via Curacao, Netherlands Antilles. An experienced customs agent, Juan Jiminez-Rosario, observed that appellant appeared "very, very nervous" as he awaited inspection of his baggage: ". . . he was looking to all places and his hands were trembling and due to my past experience as a low [law] enforcement officer I noticed him out of the crowd."[2] Jiminez-Rosario and another agent, Juan del Toro, intercepted appellant as he left the baggage area and requested that he accompany them into an office. They were joined later by a customs supervisor, Juan Pinol. Jiminez-Rosario asked appellant to empty his pockets. When he had done so, but not completely, Jim-

1. Repealed, Publ.L. 91–513, Title III, § 1101(a)(2)(4), Oct. 27, 1970, 84 Stat. 1291. Unlawful importation of cocaine and other drugs is now covered by 21 U. S.C. § 960.

2. The agent further testified, "The defendant came in, he was waiting in line and he was very nervous like this, he was looking like this, looking this, his eyes and the characteristics of his face and then—his movements and he was not still like the other passengers that were waiting to be, you know, to be waiting for luggage inspection."

inez-Rosario searched the pockets, uncovering about six hundred small "emerald-type stones" and four ladies rings. Jiminez-Rosario checked appellant's customs declaration sheet and found that these articles had not been declared. Thereupon, "suspicious", "[d]ue to the circumstances that he had brought these stones without declaring them," Jiminez-Rosario asked appellant to take off his clothes. The agents noticed a white envelope inside his underpants. Pinol seized it. After a field test disclosed that white powder in the envelope was cocaine, appellant was arrested.

■ Border searches are subject to less stringent constitutional restraints than searches within our borders. Officers may initiate searches on grounds less objective and substantial than required for other searches, and need not procure warrants. Carroll v. United States, 267 U.S. 132, 153–154, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (dictum); see· generally, United States v. Glaziou, 402 F.2d 8, 12 (2nd Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969) and cases cited; and Note, Border Searches and the Fourth Amendment, 77 Yale L.J. 1007, 1007–8 (1968).[3] The initial search of appellant's pockets was clearly justified, especially in light of the objective signs of nervousness detected by the agent. As we said recently, "a customs officer may search an individual's baggage and outer clothing, in a reasonable manner, based on subjective suspicion alone, or even on a random basis." United States v. Stornini, 443 F.2d 833, 835 (1st Cir. 1971) (citations omitted).

We have not yet determined what grounds less than probable cause may justify a so-called strip search. (In *Stornini*, we assumed without deciding the validity of the standard adopted by the Ninth Circuit: a "real suspicion"—

a "subjective suspicion supported by objective, articulable facts." United States v. Guadalupe-Garza, 421 F.2d 876, 879 (9th Cir. 1970); United States v. Johnson, 425 F.2d 630 (9th Cir. 1970), cert. granted, 400 U.S. 990, 91 S.Ct. 451, 27 L.Ed.2d 437 (1971), dismissed pursuant to Supreme Court Rule 60, 404 U.S. 802, 92 S.Ct. 38, 30 L.Ed.2d 35 (1971).)

■■ In this case we need not attempt to define the minimum showing necessary for a strip search. Wherever the line is ultimately to be drawn, the search here was well inside it. Failure to declare the emeralds and rings exposed them to forfeiture and the defendant to criminal prosecution. 19 U.S.C. §§ 1497, 1498; 18 U.S.C. § 545; 19 C.F.R. § 10.19. We do not say that every minor technical violation of the customs laws necessarily gives ground for a strip search. But we think the possession of several hundred undeclared emerald-like stones does. The nature, location and profusion of the undeclared articles plainly suggested that defendant was consciously engaged in smuggling activities. It was only reasonable to suppose that more contraband might be found on his person. That during the ensuing lawful search the customs officials discovered cocaine instead of jewelry does not make the seizure of the cocaine illegal. Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Alderman v. United States, 394 U.S. 165, 177, n. 10, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

We hold that the search and seizure did not violate the Fourth Amendment. Appellant's other argument, that the customs officers were required to inform him of his rights prior to the arrest, needs no consideration inasmuch as no prejudicial statements of his were offered into evidence.

Affirmed.

---

3. 19 U.S.C. § 482 states:

Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law. . . .