UNITED STATES of America, Plaintiff,

v.

Anthony Scott FERRONE and James Charles Donald, Defendants.

Crim. No. 75-168.

United States District Court, D. Puerto Rico.

Dec. 19, 1975.

Juan Perez Jimenez, U. S. Atty., San Juan, P. R., for plaintiff.

Bruce M. Margolin, Beverly Hills, Cal., Benjamin Ortiz, Hato Rey, P. R., for defendants.

## OPINION AND ORDER

TOLEDO, Chief Judge.

Defendants Ferrone and Donald have filed a motion for the return of seized property and the suppression of evidence and a motion to suppress statements. After a hearing was requested the motions were referred to the U. S. Magistrate for hearing and recommendation. Thereafter, counsel agreed to submit the motions on a transcript of the preliminary hearing held in this case and on additional stipulations which are on file. After studying the transcript and stipulations, the motion for the return of seized property and the suppression of evidence is granted.

The facts as appear from the record of the preliminary hearing are undisputed. On the night of May 12, 1975, several Customs' inspectors, members of a Customs' Program Against Cargo Crime (CPACC) team, were surveilling cargo at the pier located to the north of the Isla Grande Airport in downtown San Juan. Close to midnight that day, they heard a noise and inspector Leandro Rios climbed on a stack of lumber and observed through his binoculars a plane on the ground going along the runway from east to west. The plane was

never seen nor heard in the air. The inspector saw no taxiing lights on the plane, but observed what seemed to be a man with a flashlight trying to light the runway from the side of the plane. The parties have stipulated that the defendants would have testified at the hearing that the plane had on a running light located on the left side of the airplane and thus out of view from the north where the inspector was located. The aircraft reached the parking area and defendants were observed for about half an hour while they pushed the plane back and forth to set it in place and unloaded the plane.

The inspector observed the defendants take several packages from the plane to the trunk of a car parked in an airport parking lot. Inspector Rios and a partner then left the pier in their car and met the defendants' car as they were leaving the airport parking area. The inspectors identified themselves and ordered the defendants out of their car. The defendants stated that they were arriving from Ponce, a city on the other side of the Island of Puerto Rico, but the inspectors went ahead and opened the trunk of their car and found a pistol which Mr. Ferrone (who was using the false name "Costs") said belonged to him. They also found a small bag with a "tobacco like stuff that looked like marihuana".

The two inspectors then called the other two members of the CPACC team and tried to thoroughly inspect the plane but could not do so because of the darkness. In the trunk of the car they also found maps which had portions of Colombia folded out and the wrapping of the marihuana had an address in Colombia.

The Isla Grande Airport where the incidents occurred is a commercial airport where private and commercial planes operate. At the time of the arrest, the control tower at the airport was closed but the airport was operational.

The tobacco like substance found in the trunk of the car was field tested by agents of the Drug Enforcement Administration and determined to be marihuana and the defendants now stand charged with the simple possession of the substance.

The motion to suppress statements refers to statements made by Ferrone relating to the ownership of the pistol. Since the motion to suppress evidence is granted there is no need to discuss the motion to suppress statements further.

The sole justification for the search that has been put forth by the Government is that this was a customs border search and that Customs' officials are allowed to search any airplane "on suspicion" where found.[1]

The basic requirement for a Customs' border search is a border. Airports, where flights first arrive from foreign areas are considered the functional equivalents of borders and searches are allowed without warrants on the special authority of Customs' officers. However, in this case the airport was not a border since there was no evidence that the flight was an international flight and the extraterritorial origin of the flight was never established. Additionally, no proof was presented to show that international flights arrive at the airport. Finally, the airport is not listed as an international airport of entry for civil aircraft without time limit under Title 19, Code of Federal Regulations, Section 6.13, so that at the time of the search of the defendants they were not at a border equivalent.

While under Title 19, United States Code, Section 482 and Title 19, Code of Federal Regulations, Section 162.7 there is some authority for Customs' officers to search vehicles where found on the suspicion that there is contraband, no such suspicion may be inferred in this case. Here a plane arrived at a functional airport, the origin of the flight was given as domestic and while there was some confusion as to the lights on the plane, the inspector did not bother to clear this up with the occupants but chose to inspect the vehicle at once. It is true that foreign maps and marihuana with the

1. "The Government's position is inferred from the statements of the Customs' inspector at the preliminary hearing since the Government did not file a brief in this case.

foreign wrapping were found after inspection, but they do not show the origin of the flight and at most the maps would allow and inference that the plane may have been outside the territory some time before. No other evidence which might be expected in this type of case was presented, the origin of this flight in Ponce was not contradicted and a Colombian alternative was not shown. It was precisely for such domestic flight that the airport was operational. Since there was no showing that the flight was foreign, there was no reason to infer that contraband might be found.

■ With reference to the right to search airplanes where found, there is authority under Title 19, United States Code, Section 1581, Title 19, Code of Federal Regulations, Section 162.3, for Customs to board vessels and search them, wherever found, without a warrant, but that Section is not applicable to airplanes under Title 19, United States Code, Section 1401(a), (b). The authority to search airplanes is found in Title 19, Code of Federal Regulations, Section 162.5 and is limited to flights arriving in the United States from a foreign country, not "where found" as in the case of vessels. Here again the foreign origin of the flight must be established or inferred, and as described above, this did not occur in this case.

By reason of the above, and since the evidence seized from defendants is ordered suppressed, the Government is granted five (5) days to inform the Court that it can proceed without the evidence suppressed or the case shall stand dismissed.

IT IS SO ORDERED.