THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EVELYN RAITANO, Defendant-Appellant.

Second District No. 78-564

Opinion filed February 20, 1980.

Mary Robinson and John Lanahan, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Evelyn Raitano, appeals from her conviction for retail theft (Ill. Rev. Stat. 1977, ch. 38, par. 16A—3(a)) following a trial by jury. She was fined $50 plus $30 court costs.

Defendant was arrested on November 3, 1977, and charged with the offense of retail theft. Prior to trial, the defendant made a motion to suppress statements made by her to store employees on November 3. At a hearing on this motion, Helen Erickson testified that on the date in question she was the assistant security manager of the K-Mart store in Willowbrook, Illinois. She approached the defendant outside the store, showed the defendant her security officer's badge, and asked her to come back to the security office. Ms. Erickson also asked the defendant to show her the receipt for a scarf the defendant had in the loop of the handle of her purse. In response to this request, the defendant reportedly stated, "Oh, I must have forgot to pay for it."

The defendant accompanied the witness to her office and upon request showed some identification. Ms. Erickson testified that she then read the defendant "her rights" from a card. However, the witness could not remember what those rights stated. Upon learning the defendant's address, the witness asked her, "You come all the way from North Riverside to steal at K-Mart?" To this the defendant reportedly responded, "Sure, why not?"

While the defendant was in her office, the witness called the police and filled out an "Apprehension Report." This report stated that the defendant "was wandering around in the store, took the price off the scarf and put the scarf on her purse." The bottom of the report stated that the defendant had "read and under[stood] the above and to the best of [her] knowledge, it is true in every respect." Ms. Erickson testified that she did not specifically advise the defendant that the report contained incriminating statements that could be used against her or that she had a right to refuse to sign it. The witness testified that the defendant was crying when she signed the report. While in the office, the defendant asked if Ms. Erickson was "going to send her away to jail for a $1.50 scarf?" The witness responded affirmatively. Store employee Robert Woods, who was present with the defendant and Ms. Erickson in the security office, corroborated much of Ms. Erickson's testimony.

After the testimony of Erickson and Woods, defense counsel moved for a directed finding that the evidence must be suppressed since the defendant was not given *Miranda* warnings in what was a hostile interrogation. This motion was denied.

Defendant then was called to testify concerning her conversations with Erickson and Wood. According to the defendant, Ms. Erickson told her that the police would not be called unless she signed a statement. Ms. Erickson did not call the police until the defendant signed the report. The defendant denied that she had been orally told that she had the right to remain silent. She testified that Erickson's tone of voice was very sarcastic and that the defendant was crying when she signed the form without reading it.

After defendant's testimony, defense counsel again moved to suppress statements made to the security officers. The court denied the motion on the basis that because the interrogation was not under police auspices, *Miranda* is not applicable and that the statements were voluntarily given.

Defendant then proceeded to trial. At trial, Erickson and Woods, in addition to the testimony summarized above, stated that they saw the defendant take a scarf from one of the racks and later tear the price tag off the scarf. The defendant then put the scarf in a loop in her purse. Mr. Woods later retrieved a millinery price ticket from the floor of the men's department where he had seen the defendant drop the ticket from the

scarf. Erickson and Wood then waited outside the store for the defendant. The apprehension report, signed by the defendant, was identified by the two witnesses and admitted into evidence.

The defendant also testified at trial. She stated she put the scarf in the handle of her purse since her hands were full of other items. While she paid for $66 worth of merchandise, she forgot to pay for the scarf. She denied removing the tag from the scarf. The defense also called a character witness, and a Willowbrook police officer testified he was not sure if any price tags were put into the evidence bag following defendant's arrest.

The jury found the defendant guilty as charged. Defendant's motion for a new trial was denied, and this appeal followed.

On appeal defendant contends that the trial court erred in denying her motion to suppress for two reasons: (1) the evidence was obtained in a custodial situation in which no *Miranda* warnings were given, and (2) it was not shown that the confession contained in the report was knowing and voluntary.

■■■ In the landmark case of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the United States Supreme Court held that the prosecution may not use statements stemming from custodial interrogation of a defendant unless it demonstrates the use of specified procedural safeguards to secure the privilege against self-incrimination. The court went on to define "custodial interrogation" in terms of "questioning *initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 1612.) The issue of whether *Miranda* warnings are a prerequisite to the admission into evidence of statements made to private security guards has been a frequent subject of appellate litigation. (See *United States v. Antonelli* (2d Cir. 1970), 434 F.2d 335, and the cases cited therein; see also *State v. Bolan* (1971), 27 Ohio St. 2d 15, 271 N.E.2d 839; Annot., 31 A.L.R. 3d 565, 666-68 (1970).) These cases have uniformly held that questioning by private security guards does not constitute a custodial interrogation under *Miranda*.[1] While there appear to be no Illinois decisions directly on this point, there are several Illinois cases that provide guidance.

In *People v. Morehead* (1970), 45 Ill. 2d 326, 259 N.E.2d 8, our supreme court found that *Miranda* warnings were not required prior to questioning—at a police station—by agents of the telephone company. Similarly, in *People v. Shipp* (1968), 96 Ill. App. 2d 364, 239 N.E.2d 296, the court held that questioning by a school principal did not constitute a

---

[1] The issue of the need for security guards who, unlike the guards in the case at bar, are given statutory authority as "special" police officers to give *Miranda* warnings remains unsettled. Compare *State v. McDaniel* (1975), 44 Ohio App. 2d 163, 337 N.E.2d 173, with *People v. Smith* (Crim. Ct. N.Y. 1975), 82 Misc. 2d 704, 368 N.Y.S. 2d 954.

custodial interrogation for *Miranda* purposes. In *People v. Vlcek* (1969), 114 Ill. App. 2d 74, 252 N.E.2d 377, this court was faced with the unusual issue of whether a private individual posing as a fire marshall was required to give *Miranda* warnings. After discussing the *Shipp* case, this court, in reversing the suppressing of the statements in question, found that "the admonitions required by Miranda are applicable to law enforcement officials—not private persons—even though the private persons may be posing as law enforcement officials." (114 Ill. App. 2d 74, 80, 252 N.E.2d 377, 380.) Finally, in the related context of searches under the fourth amendment, it has been held that searches by security guards do not constitute State action. *People v. Toliver* (1978), 60 Ill. App. 3d 650, 377 N.E.2d 207; but *cf. People v. Zelinski* (1979), 24 Cal. 3d 357, 594 P.2d 1000, 155 Cal. Rptr. 575.

■■ The defendant argues that notwithstanding the above cited authority to the contrary, *Miranda* warnings were required because the store security guards in detaining and questioning the defendant were acting under authority of section 16A—5(c) of the retail theft act. This section provides that:

> "Any merchant who has reasonable grounds to believe that a person has committed retail theft may detain such person, on or off the premises of a retail mercantile establishment, in a reasonable manner and for a reasonable length of time for all or any of the following purposes:
> (a) To request identification;
> (b) To verify such identification;
> (c) To make reasonable inquiry as to whether such person has in his possession unpurchased merchandise and, to make reasonable investigation of the ownership of such merchandise;
> (d) To inform a peace officer of the detention of the person and surrender that person to the custody of a peace officer;
> (e) In the case of a minor, to inform a peace officer, the parents, guardian or other private person interested in the welfare of that minor of this detention and to surrender custody of such minor to such person.
>
> A merchant may make a detention as permitted herein off the premises of a retail merchantile establishment only if such detention is pursuant to an immediate pursuit of such person." (Ill. Rev. Stat. 1977, ch. 38, par. 16A—5.)

Under the common law, a shopkeeper who reasonably suspects a customer of theft or failure to pay may detain the suspected individual for a short time to investigate. (Prosser, Torts 121-23 (4th ed. 1971); Restatement (Second) of Torts §120A (1965).) Thus section 16A—5 is in many respects merely a codification of the common law shopkeepers'

privilege. However, by sanctioning detention of a suspect until police arrive, this section may also be viewed as a broadening of the common law.

■■ The effect of a similar statutory privilege has been discussed in at least two cases from other jurisdictions. In *People v. Frank* (1966), 52 Misc. 2d 266, 275 N.Y.S.2d 570, and *State v. Bolan* the courts reasoned that the limited detention rights extended by such statutes do not place store security guards in the category of law enforcement officers for *Miranda* purposes.[2] In the instant case we are not confronted with a situation where security guards are acting in a coordinated effort with the police. (*Cf. People v. Jones* (1979), 47 N.Y.2d 528, 419 N.Y.S. 2d 447, where police assisted in the detention and waited outside the security office while the store guards questioned the suspect.) As a general rule, merely acting pursuant to a state statute does not in and of itself constitute "state action" requiring constitutional guarantees. (*Flagg Brothers, Inc. v. Brooks* (1978), 436 U.S. 149, 56 L. Ed. 2d 185, 98 S. Ct. 1729; *Executive Commercial Services, Ltd. v. Daskalakis* (1979), 74 Ill. App. 3d 760, 393 N.E.2d 1365.) In sum, we hold that under the facts of this case, the statements given to the security guards were not rendered inadmissible by the alleged failure to give the warnings outlined in *Miranda*.

■■ Defendant also argues the apprehension report should have been suppressed on the basis that it was not shown that the confession contained in the report was knowing and voluntary. The trial court heard evidence that the defendant was crying during the interrogation. The store guards testified that they made no threats or promises in order to get the defendant to sign the form. The defendant, however, claims that she was told the police would not be called until she signed. There was also conflicting testimony as to whether or not the defendant read the report before signing it. The preliminary inquiry into the voluntary nature of the statement is a question for the trial court. In making its decision the court is not required to be convinced beyond a reasonable doubt. The finding of the trial court on this question will only be reversed if found to be contrary to the manifest weight of the evidence. (*People v. Higgins* (1972), 50 Ill. 2d 221, 278 N.E.2d 68.) After reviewing the testimony, we cannot say that the trial court's finding of voluntariness was against the manifest weight of the evidence.

Accordingly, the judgment of the Circuit Court of Du Page County is affirmed.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.

---

[2] For a contrary point of view see Judge Zafiratos, *The Proposed Use of Motion to Suppress in the Case of Statement Taken by Security Guards*, 3 Gavel 180 (Winter 1980).