**UNITED STATES of America, Plaintiff,**

**v.**

**Ronald DANSBERRY, Defendant.**

**No. 80 CR 281.**

United States District Court,
N. D. Illinois, E. D.

Oct. 21, 1980.

Richard N. Cox, Ludwig E. Kolman, Asst. U. S. Attys., Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for plaintiff.

Carol Brook, Federal Defender Program, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

Ronald Dansberry was indicted for using the United States mails to receive unemployment benefits under the name of Satterfield, in violation of 18 U.S.C. § 1341. Pursuant to Fed.R.Crim.P. 41(f) he filed a motion to suppress all evidence seized incident to his arrest, contending that the search was unwarranted and unreasonable under the Fourth Amendment.

Dansberry was arrested by Elmer Brown, a Chicago policeman who also works part-time as a security guard for Sears Department Store. Brown made the arrest after watching Dansberry and his companion Collins, both black men, shopping in the stereo department. Collins selected a stereo set and attempted to purchase it with a credit card bearing the name of John Martin Prpich. After Collins signed Prpich's name on the sales slip, the salesman alerted Brown that something was wrong with the card. While Collins completed the sale, Brown checked with the Sears Central Credit Office and discovered that the card had been lost. Brown then approached Dansberry and Collins and asked them to come to the security office where they were searched. Brown searched Dansberry's wallet and found identification in the name of Satterfield as well as Dansberry.

The Chicago police were called to the security office. After Collins told the police that Dansberry had found the card, both Collins and Dansberry were arrested for violation of the Illinois Credit Card Act, 1979 Ill.Rev.Stat. ch. 121½, § 601 et seq. Brown told the police officers about Dansberry's dual identification and suggested name checks at this time. It was discovered that a battery warrant was outstanding and Dansberry was taken into custody. The cards were left on the desk, and although the Chicago Police testified that a search was not made until they finally arrived at the police station, I find that the products of Brown's search were given to the responding officers when they arrived at the Sears store. This evidence led to Dansberry's indictment for fraudulently receiving unemployment checks.

At issue is whether Brown was acting in the capacity of a police officer or a private security guard at the time of the arrest and search. The government, relying on *People v. Luetkemeyer*, 74 Ill.App.3d 708, 30 Ill. Dec. 462, 393 N.E.2d 117 (1979), contends that although Brown is a police officer, he was acting in the capacity of a private security guard when he searched Dansberry. It claims that, as a private party, Brown is not subject to fourth amendment proscriptions. The government contends that Brown was not acting as an instrument or agent of the state because: (1) Brown was not on duty at the time of the search; (2) Brown was not acting under a directive from the police department; (3) the detention, arrest and search were undertaken for Sears' benefit; (4) any conversations Brown may have had with the Chicago police informing them of Dansberry's dual identification and suggesting a name check were not inconsistent with his status as a private security guard; and (5) at no time during the incident did Brown identify himself as a police officer or draw his weapon. Further, the government contends that even if Brown were acting in his official capacity there was probable cause to make the arrest and asserts that a warrantless search incident to a lawful arrest does not violate the fourth amendment.

In contrast, Dansberry alleges that under Illinois law a police officer has the duty to make arrests at any time and place and, as a result of this duty, is permitted to carry a weapon whether on or off duty. Dansberry reasons that in making any arrest Brown is acting as an official government agent whose actions must comport with fourth amendment standards. Dansberry alleges that Brown exceeded the scope of his authority in searching him and that the evidence obtained from that search must be excluded. He maintains that the *Luetkemeyer* court ignored relevant Illinois decisions and, thus, its conclusion that a police officer is not always on-duty is not entitled to great weight. Dansberry states that Brown was acting in his official capacity

because: (1) police regulations impose a twenty–four hour a day duty to make arrests whenever a crime is witnessed; (2) Brown was carrying a gun and wearing a Chicago police badge at the time of the incident; and (3) Brown made the search in violation of Sears' own regulation which prohibits searches except in serious cases such as robbery, burglary or assault where it is believed that the arrested person might be armed. Finally, Dansberry contends that the search was not incident to a lawful arrest because there was no probable cause. He maintains that no evidence linked him with the credit card and asserts that his presence while Collins made the sale, his participation in the selection of the stereo and his silence when Brown questioned Collins cannot be the basis for probable cause to believe Dansberry violated the Illinois Credit Card Act.

■ It is beyond dispute that searches conducted by private individuals for purely private purposes are not within the purview of constitutional regulation. *United States v. Lamar*, 545 F.2d 488 (5th Cir.) *cert. denied*, 430 U.S. 959, 97 S.Ct. 1609, 51 L.Ed.2d 810 . (1977). The test for determining Brown's status is whether, in the light of all the circumstances, Brown must be regarded as having acted as an instrument or agent of the state. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

■ The government's argument, that since Brown was not acting in response to a government directive and a government agent did not assist in the search he was not acting in his official capacity, is not persuasive. At the time he made an arrest, Brown had the capacity to exercise the powers invested in him by the Police Department. *See* Rules and Regulations of Chicago Department of Police, IV(c)(1) and Rule V(21). Brown testified that he was aware that as a police officer he had the power to effect an arrest at any time. Since under Illinois law Brown had the obligation and the power to make the arrest, Brown was acting as a government official whose conduct comes within the purview of the fourth amendment.

*People v. Luetkemeyer*, 74 Ill.App.3d 708, 30 Ill.Dec. 462, 393 N.E.2d 117 (1979) does not compel a different result, for that case is inapplicable. In *Luetkemeyer*, the search was conducted by Bunting who, although a Special Deputy Sheriff and Captain of the Fire Protection District, had been invited onto the defendant's property solely in his capacity as a repairman. At the time of the search Bunting had not served as a Deputy Sheriff for several years and could not do so without a specific request from the Sheriff. In contrast, Brown had the power to exercise his law enforcement functions at the time of the arrest.

■■ Acting in the capacity as police officer, Brown's warrantless search was valid if it was made incident to a lawful arrest. The arrest was lawful if there was probable cause to believe Dansberry committed any crime. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). What is reasonably probable is determined in the light of the particular facts of each case. *United States ex rel. Burbank v. Warden, Illinois State Penitentiary*, 535 F.2d 361 (7th Cir. 1976), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 750, 50 L.Ed.2d 758 (1977).

■■ It is well settled that neither mere presence at the scene of the crime, *United States v. Gaston*, 620 F.2d 635 (7th Cir. 1980), or mere suspicion of criminal conduct, *United States ex rel. Burbank v. Warden, Illinois State Penitentiary*, 535 F.2d 361 (7th Cir. 1976), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 750, 50 L.Ed.2d 758 (1977), gives probable cause to arrest. The record here does not contain sufficient facts to establish probable cause. Unlike the arresting officer in *Burbank*, Brown had no previous information regarding the suspect. Nor was there any corroborating evidence besides mere presence to constitute probable cause as there was in *Gaston*. Brown's suspicions were wholly subjective. Thus, the arrest of Dansberry for violation of the Illinois Credit Card Act was not justified and, accordingly, the search was unconstitutional.

**144**

Moreover, assuming, *arguendo* that Brown was acting as a private security guard, it is necessary to consider if he had the authority to arrest Dansberry and whether this authority was exceeded in the search for and seizure of evidence. Under the Retail Theft Act, 1979 Ill.Rev.Stat. ch. 38, § 16A–5[1] a private security guard has the power to detain a customer suspected of unlawfully taking merchandise. The statute permits a merchant to request identification and to make reasonable investigation regarding the merchandise, and to surrender the suspect to the custody of a police officer. The statute does not grant authority to search.

Determination of whether a particular search is prohibited requires balancing the public interest against the fourth amendment interest of the individual. *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). In making this determination courts have focused on three factors: the public necessity for the search, the efficacy of the search and the extent of the intrusion upon the individual. *Chenkin v. Bellevue Hospital Center*, 479 F.Supp. 207, 213 (S.D.N.Y.1979).

When public safety demands it, the strictures of the fourth amendment have been relaxed in order to protect the public from the threat of physical harm. Thus, the constitutionality of searches at airports, national borders and hospitals have been upheld. *See United States v. Henry*, 615 F.2d 1223 (9th Cir. 1980); *United States v. Carter*, 592 F.2d 402 (7th Cir. 1979) and *Chenkin v. Bellevue Hospital Center*, 479 F.Supp. 207 (S.D.N.Y.1979). Unlike those situations, however, where the

public interest in preventing terrorism is strong, the public interest in preventing the theft of retail merchandise is not so great that it demands a relaxation of fourth amendment protection. Here the balance is weighed heavily in favor of protecting the rights of the individual. The interest of the merchant in detaining a customer suspected of unlawfully taking merchandise is sufficiently served by the right to detain the suspect until a police officer arrives. The statute extending limited detention rights does not place private security guards in the category of police officers with the power to conduct full searches. *People v. Raitano*, 81 Ill.App.3d 373, 36 Ill.Dec. 597, 401 N.E.2d 278 (2d Cir. 1980).

The next consideration is the efficacy of the search. Unlike the scope of permissible search by a police officer incident to a lawful arrest, a private security guard has only the power, under 1979 Ill.Rev.Stat. ch. 38, § 16A–5, to request identification and make a reasonable investigation. The guard does not have the authority to conduct a full search. Indeed, Sears' own regulations prohibiting searches except when it is suspected that the individual is armed explicitly recognize the limits of the guard's authority.

The final factor to be considered is the nature and the degree of intrusion upon the individual. The government urges that although the Retail Theft Act, 1979 Ill.Rev. Stat. ch. 38, § 16A–5 does not authorize searches, the fact that Brown, acting as a private individual, may have exceeded his statutory authority is irrelevant.[2] This argument is without merit. The Constitution

---

1. Section 16A 5 provides in relevant part as follows:

    *Any merchant who has reasonable grounds to believe that a person has committed retail theft may detain such person, on or off the premises of a retail mercantile establishment, in a reasonable manner and for a reasonable length of time for all or any of the following purposes:*
      *(a) To request identification;*
      *(b) To verify such identification;*
      *(c) To make reasonable inquiry as to whether such person has in his possession unpur-*

    *chased merchandise and, to make reasonable investigation of the ownership of such merchandise;*
      *(d) To inform a peace officer of the detention of the person and surrender that person to the custody of a peace officer.*

2. *People v. Toliver,* 60 Ill.App.3d 650, 18 Ill. Dec. 54, 377 N.E.2d 207 (1978) is distinguishable, for there the private security guard did not have a dual status as a law enforcement officer and the search was directed specifically at recovering stolen merchandise.

guarantees the right to privacy. *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). With the growing reliance on private security personnel to supplement law enforcement authorities, courts have recognized that an improper search by a security guard poses a serious threat to that privacy which is comparable to a threat posed by the unlawful conduct of police officers. *People v. Zelinski*, 24 Cal.3d 357, 155 Cal.Rptr. 575, 594 P.2d 1000 (1979).

Further, even if Brown's acts were acts of a private security guard, Brown was not acting in a solely private capacity. By detaining and searching Dansberry, Brown was using the authority conferred upon him by state law to further not only his employer's interest in preventing retail theft but also the state interest in apprehending a criminal. His actions were sufficiently connected with official law enforcement to fall within the scope of the fourth amendment. *People v. Zelinski*, 24 Cal.3d 357, 155 Cal. Rptr. 575, 594 P.2d 1000 (1979). If private security guards are permitted to ignore fourth amendment proscriptions, reliance on private security personnel rather than law enforcement officers will be encouraged and unconstitutional searches will increase. Such a result is untenable. Therefore, "where private security personnel assert the power of the state to make an arrest or to detain another person for transfer to custody of the state, the state involvement is sufficient for the court to enforce the exercise of that power . . . by excluding the fruits of illegal abuse. . . ." *People v. Zelinski*, 24 Cal.3d 357, 368, 155 Cal.Rptr. 575, 581, 594 P.2d 1000, 1006 (1979).

Accordingly, Dansberry's motion to suppress is granted.