UNITED STATES of America, Plaintiff,

v.

Corrado BONFANT, Mary Zita Ingster, Defendants.

Crim. No. 86–553 (JP).

United States District Court, D. Puerto Rico.

March 5, 1987.

**510**

Antonio Bazán, Asst. U.S. Atty., U.S. Atty.'s Office, Hato Rey, P.R., for plaintiff.

Joaquín Monserrate Matienzo, Hato Rey, P.R., for Corrado Bonfant.

José R. Aguayo, Hato Rey, P.R., for Ingster.

## ORDER

PIERAS, District Judge.

On November 5th, 1986, the Grand Jury returned a three-count indictment against Corrado Bonfant and Mary A. Zita Ingster. The indictment charged violations of 21 U.S.C. section 952 (importation of cocaine), section 841(a)(1) (possession with intent to distribute), and section 955 (possession of cocaine on board an aircraft where possession is not entered on manifest). The indictment also charged violation of 18 U.S.C. section 2, in that defendants aided and abetted each other in the commission of these offenses. On December 18, 1986, defendant Corrado Bonfant filed a Motion to Suppress all physical evidence seized by United States Customs' officers, based on his status as an "in-transit" passenger. On that same date, both defendants filed a motion to dismiss the indictment, alleging that as "in-transit" passengers, they were at no time under the jurisdiction of United States Customs or other law enforcement authorities. The government opposed these motions. The Magistrate issued Reports and Recommendations counseling denial of both motions. Defendants appeal those Reports and Recommendations.

For the reasons set forth herein, we DENY both motions.

### I.

On October 29, 1986, defendants arrived at Luis Muñoz Marin International Airport aboard Lufthansa Airlines, Flight # 513. The flight originated in Bolivia and was en route to West Germany. Passengers, such as the defendants in the instant case, who are not scheduled to disembark in Puerto Rico, are not processed by United States Immigration or Customs personnel. Such passengers are directed to an enclosed area known as an "in-transit" lounge while awaiting to reboard the aircraft in order to proceed to their final destinations outside the United States. While the defendants were in the "in-transit" lounge, United States Customs Officers searched the passenger and luggage compartments of the aircraft. Among the items searched, the agents found a green garment bag containing 13 ball-shaped pieces of plastic. A probe of one of these objects revealed a substance that tested positive for cocaine. Upon inspection of all in-transit passengers' baggage claim numbers during reboarding, codefendant Bonfant was found with the baggage claim number which matched the numbers on the bag containing the substance. Mr. Bonfant, an Italian citizen, was placed under arrest. Defendant Ingster, who was already proceeding to reboard the aircraft, returned and offered to translate for Mr. Bonfant. Upon inquiry, Ms. Ingster responded that she was merely traveling on the same plane. Inspection of Ms. Ingster's airline tickets indicated that they were sequential to those of Mr. Bonfant and that they had an identical travel itinerary. Ms. Ingster allegedly later admitted that she had been traveling with Mr. Bonfant. Ms. Ingster was also placed under arrest. There is no indication that they had any intention of disembarking nor that they were going to meet any third party for the purposes of removing the contraband from the aircraft anywhere in the United States.

## II. *Motions to Dismiss Counts One and Two*

This matter is based upon the argument that this Court is without subject matter jurisdiction to entertain an indictment charging criminal conduct which occurred and was to have effect outside the jurisdictional limits of the United States. It is further argued that the facts of the instant case indicate that the charged conduct is not within the meaning of conduct proscribed in Title 21 U.S.C. Sections 952(a) and 841(a)(1), the statutes upon which Counts One and Two of the indictment are predicated.

The defendants argue that the two statutes, 21 U.S.C. §§ 841 and 952 were not intended to prosecute narcotics trafficking that is exclusively foreign in nature. In other words, defendants argue on the basis of their status as "in-transit" passengers that they did not in fact enter the United States and thus did not in fact "import" contraband *into the United States* (21 U.S.C. § 952(a)) nor did they "possess with intent to distribute" *into the United States* (21 U.S.C. § 841(a)(1)).

▮ In the instant case, the defendants were clearly within the territorial jurisdiction of the United States when Flight # 513 entered United States airspace over the ocean outside Puerto Rico. *E.g., United States v. Muench,* 694 F.2d 28, 34 n. 2 (2d Cir.1983). The fact that they were not required and did not intend to pass through United States Customs is immaterial. *See Muench,* 694 F.2d at 32. As the Second Circuit pointed out in *Muench,* wherein the defendants made "the astounding argument that they never entered United States territory because they never attempted to go through Customs. The two defendants are mistaken if they believe that the territorial jurisdiction of the United States is defined by the location of its customs counters." *Id.* at 34, n. 2. As such, defendants' contention that they did not enter the United States and thus did not import the contraband into the Customs territory of the United States is rejected as an improper and incorrect construction of the facts in the instant case. A literal reading of the importation statute together with the definitional sections alone indicates that defendants are within its scope. *See* 21 U.S.C. § 952(a); *see also* 21 U.S.C. §§ 951(a)(1), (2), 802(24) & (26); 19 U.S.C. § 1202.

The Motion to Dismiss Count One is DENIED.

▮ Likewise, a literal reading of the possession with intent to distribute statute suggests no additional requirement that the intended distribution be within the United States and as a result, defendants are within its scope as well. Furthermore, it has been consistently held that an intent to distribute in a foreign country satisfies the intent element under 21 U.S.C. § 841(a)(1) "so long as the intent coincides at some point with possession in the United States." *United States v. Gómez-Tostado,* 597 F.2d 170, 172 (9th Cir.1979); *accord, United States v. Montoya,* 782 F.2d 1554, 1555 (11th Cir.1986); *Muench,* 694 F.2d at 33; *United States v. Mandalone,* 492 F.Supp. 916, 920 (S.D.Fla.1980).

Although defendants argue that any criminal conduct attributable to them occurred and was to have an effect outside the United States, such contention is not supported in the face of the government's allegations. Defendants stand accused of being "present in the United States possessing a quantity of cocaine large enough for [a] jury to infer an intention to distribute it." *Montoya,* 782 F.2d at 1555.

Contrary to defendants' interpretation, an adequate jurisdictional nexus exists under even the true in-transit situation between the criminal actor, the acts, and the jurisdiction that seeks to punish those acts. Defendants have been accused of having "imported" contraband *into* the United States and having "possessed" contraband with intent to distribute (albeit somewhere else) *in* United States territory. Secondly, "permitting the United States to be used as a conduit for narcotics such as [cocaine] has obvious direct effects on our nation." *Mandalone,* 492 F.Supp. at 919; *accord, Muench,* 694 F.2d at 32. Furthermore, the general intent underlying United States Drug Control Laws supports the theory

that Congress did not intend the public to bear the risk of violence attending *any* transportation of illicit drugs. *Id.* Finally, Congress has reaffirmed its intent and obligation to control the illegal traffic of drugs on both the domestic and international level. *See* Comprehensive Crime Control Act of 1984, P.L. 98–473, October 12, 1984, 98 Stat. 1837, S.Rep. No. 225, 98th Cong., 2d Sess, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182; 21 U.S.C. § 801a(1), (2) (Congress finds that substance abuse is not confined to national boundaries and therefore that United States must cooperate with other nations in establishing effective controls over international traffic in such substances); Convention on Psychotropic Substances, T.I.A.A. No. 9725, signed at Vienna, Austria, on February 21, 1971, and entered in force in United States on July 15, 1980, *see* 21 U.S.C. § 801a; Psychotropic Substances Act of 1978, P.L. 95–633, November 10, 1978, 92 Stat. 3772, S.Rep. No. 959, 95th Cong., 2d Sess., *reprinted in* 1978 U.S. Code Cong. & Admin. News 9496. Thus, "it would be absurd to ignore Congress' expressed intent and hold that international drug dealers who make stopovers in the United States are exempt from the U.S. drug laws as long as they do not attempt to go through U.S. Customs." *Muench,* 694 F.2d at 32.

The Motion to Dismiss Count Two is DENIED.

### III.  *Motion to Suppress*

The defendant argues that the search of the aircraft and seizure of the substance cannot be justified under the Fourth Amendment as a valid "border search" because neither defendant nor his luggage were seeking to "enter" the United States. It is further argued that the search and seizure was unreasonable because Customs' officials discovered and seized the evidence in violation of their own regulations. Defendant moves that the evidence resulting from Customs' allegedly illegal search and seizure be suppressed.

### A.  *Border Search*

Defendant's argument that neither he nor his luggage "entered" the United

States is simply not supported by the facts. Again, defendant was clearly within the territorial jurisdiction of the United States after Flight # 513 entered United States airspace over the ocean outside Puerto Rico.

Long ago, the First Circuit rejected the argument that contraband was not "imported" into the United States merely because defendants did not attempt to bring the contraband across customs lines. *Palmero v. United States,* 112 F.2d 922, 924 (1st Cir.1940) (act of bringing the drugs within territorial boundaries gave court jurisdiction despite fact that customs officials seized drugs which were destined for another jurisdiction). The *Palmero* court based its jurisdiction upon "the bringing of the prohibited article within the territorial boundaries of the United States—that is, alike within the waters or upon the lands." *Id.* at 924. The fact that defendant was not required and did not intend to pass through United States Customs is immaterial. *Muench,* 694 F.2d at 32. As such, defendant's argument that neither he nor his luggage "entered" the customs territory of the United States is rejected as an improper and incorrect construction of the facts in the instant case.

Additionally, it would be difficult to say that in-transit baggage was "never brought under the control of customs authorities" given that the applicable air commerce regulations require international flights such as Lufthansa # 513 to receive clearance to land and depart from Customs Authorities. *See* 19 C.F.R. §§ 6.1–6.25; *Muench,* 694 F.2d at 34 n. 3; *cf. United States v. Garcia,* 672 F.2d 1349, 1368 n. 31 (11th Cir.1982) (border search of aircraft held valid on both constitutional and statutory basis).

Defendant's argument encompasses the theory that the search and seizure in the instant case did not constitute a valid "border search" and was therefore unreasonable and illegal under the Fourth Amendment. Regarding the "reasonableness" of border searches conducted by U.S. Customs' Officers, the Supreme Court has re-

cently reaffirmed the Government's "authority to conduct routine searches and seizures at the border, without probable cause or a warrant in order to ... prevent the introduction of contraband into this country." *United States v. Montoya de Hernández*, 473 U.S. 531, 537, 105 S.Ct. 3304, 3309, 87 L.Ed.2d 381 (1985) ("[r]outine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant ...") (citing *United States v. Ramsey*, 431 U.S. 606, 616–17, 97 S.Ct. 1972, 1978–79, 52 L.Ed.2d 617 (1977)). "The concern for the protection of the border ... is, if anything, heightened by the veritable national crisis in law enforcement caused by smuggling of illicit narcotics" *Id.* As the court concluded in *United States v. Ramsey*, 431 U.S. 606, 619, 97 S.Ct. 1972, 1980, 52 L.Ed.2d 617 (1977) (footnote omitted):

> [b]order searches then, from before the adoption of the Fourth Amendment, have been considered "reasonable" by the single fact that the person or item in question had entered into our country from outside.... This longstanding recognition that searches at our borders without probable cause and without a warrant are nonetheless "reasonable" has a history as old as the Fourth Amendment itself.

*Id., United States v. Nieves*, 609 F.2d 642, 645 (2d Cir.1979) *cert. denied* 444 U.S. 1085, 100 S.Ct. 1044, 62 L.Ed.2d 771 (1980); *accord, Torres v. Commonwealth of Puerto Rico*, 442 U.S. 465, 472–73, 99 S.Ct. 2425, 2430, 61 L.Ed.2d 1 (1979); *Muench*, 694 F.2d at 33, *United States v. Saint Prix*, 672 F.2d 1077, 1083 (2d Cir.) *cert. denied*, 456 U.S. 992, 102 S.Ct. 2274, 73 L.Ed.2d 1287 (1982). The First Circuit has noted that during an airport border search, "a Customs' officer may search an individual's baggage ... in a reasonable manner, based on subjective suspicion alone, *or even on a random basis.*" *United States v. Flores*, 477 F.2d 608, 609 (1st Cir.) (emphasis added), *cert. denied*, 414 U.S. 841, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973) (*quoting United States v. Stornini*, 443 F.2d 833, 835 (1st Cir.1971) (citations omitted)).

"The basic requirement for a Customs' border search is a border. Airports, where flights first arrive from foreign areas are considered the functional equivalents of borders and searches are allowed without warrants on the special authority of Customs' officers." *United States v. Ferrone*, 413 F.Supp. 408, 409 (D.P.R. 1975). As discussed above, defendant's argument that neither he nor his baggage entered United States Customs territory is rejected. On that basis, the "United States has immediate authority to conduct border searches whenever persons or vessels entering from a foreign jurisdiction cross its geographical boundaries, and such searches need not be conducted at a customs station.... An attempt to pass through customs, or permanently to remain in the United States, was unnecessary to establish the border crossing." *Muench*, 694 F.2d at 34 n. 2; *cf. United States v. Saint Prix*, 672 F.2d at 1083 (" 'border' is an elastic concept; its precise limits depend on the facts of each case"). Thus, the search and seizure of evidence from defendant's luggage is properly upheld as a valid lawful border search reasonable under the Fourth Amendment. Therefore, the evidence obtained as a result should not be suppressed on that basis.

## B. *Customs Regulations*

The defendant further moves to suppress on the ground that Customs' officials discovered and seized the evidence in violation of their own Customs Regulations. We find adequate support in the Customs Regulations permitting Customs' officers to board and search aircraft arriving into the United States from a foreign country. *See* 19 C.F.R. § 162.5. Title 19, U.S.C. Section 1582, as amended provides that:

> "The Secretary of the Treasury may prescribe regulations for the search of persons and baggage ... and *all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government under such regulations.*" (emphasis added)

*See Montoya de Hernández,* 105 S.Ct. at 3310. Furthermore, Section 6.10 of the Air Commerce Regulations sets forth that;

> ... *aircraft arriving* or having arrived *from any foreign port* or place *and* the persons and merchandise, including *baggage,* carried thereon, *shall be subject to the laws and regulations applicable to vessels* arriving or having arrived from any foreign port or place, to the extent that such laws and regulations are administered by the Customs' Service. (emphasis added)

19 C.F.R. § 6.10 (1986). Title 19 U.S.C. Section 1581 empowers Customs' Officials to board and examine, inspect and search vessels and any person, package or cargo aboard. Thus, 19 C.F.R., Section 6.10 incorporates Title 19 U.S.C., Section 1581, by reference. *See Garcia,* 672 F.2d at 1368 n. 31.

We find that 19 C.F.R. § 162.0 et seq. are directly to the issue here, which is the inspection, search and seizure of defendant's suitcases. Section 162.5, 19 C.F.R., as amended, provides that:

> "A customs officer may stop any vehicle *and board any aircraft arriving in the United States from a foreign country for the purpose* of examining the manifest and other documents and papers and examining, *inspecting, and searching the* vehicle or *aircraft."* (emphasis added).

Section 162.6, 19 C.F.R., as amended, provides, in part, that:

> "*All* persons, *baggage,* and merchandise *arriving* in *the customs territory of the United States from places outside thereof are liable to inspection and search by a Customs officer...."* (emphasis added)

The District Court for the District of Puerto Rico has recognized that the "authority to search airplanes is found in Title 19, Code of Federal Regulations, Section 162.5, and is limited to flights arriving in the United States from a foreign country...." *United States v. Ferrone,* 413 F.Supp. at 410 (evidence suppressed because foreign origin of flight not established or inferred). At this pretrial stage, suppression for lack of establishment of foreign origin would be inappropriate. There is, therefore, adequate statutory authority for the conduct of a border search in the manner carried out by Customs officers in the instant case.

Defendants claim nevertheless, that because he was not present during the search of the garment bag, the search violated 19 C.F.R. § 148.21 (1986). Because of this alleged violation, defendant maintains, the search was a fortiori unreasonable and the evidence obtained must be suppressed. The scope of 19 C.F.R. Part 148 reads: "This part contains regulations governing the allowance of exemptions for residents and nonresidents arriving in the United States ... Procedures and requirements are also set forth pertaining to ... declaration and entry, and examination of baggage, and collection of duties and tapes."

Defendant cannot have it both ways. While claiming that he never entered the United States for jurisdictional purposes, he cannot seek whatever protection would be afforded by the regulations to persons formally entering the United States. In any event, we find that Part 148 is inapplicable to this case. That part, insofar as it deals with inspection of luggage or whether certain articles "accompany" a passenger, refers to inspection for the purpose of determining applicable duties as part of formal entry into the United States. Part 148 is inapplicable to in-transit passengers.

For the reasons elucidated above, defendant Bonfant's Motion to Suppress is DENIED.

IT IS SO ORDERED.