**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Maria Lucia COLLINS,**
**Defendant-Appellant.**

No. 84–5194.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 1, 1985.

Decided June 25, 1985.

David Wiechert, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

W. Michael Mayock, Law Offices of W. Michael Mayock, Los Angeles, Cal., for defendant-appellant.

Before BROWNING, BARNES, Circuit Judges, and PRICE, District Judge.*

BARNES, Circuit Judge:

Maria Lucia Collins appeals from her conviction of one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). We affirm.

## I. BACKGROUND

On January 12, 1984, Customs inspectors were routinely examining airway bills of lading for packages which had arrived on a Varig Airlines flight from Brazil to Los Angeles. One of the airway bills, concerning an alleged shipment of "hearts of palm" addressed to appellant Collins, caught the attention of one of the inspectors because the shipment came from a narcotics source country and had no declared commercial value.

The inspectors placed a hold on the shipment, and on January 13, 1984, upon being informed by Varig Airlines that the shipment had been located, the inspectors examined the boxes and opened one of the cans therein which was labelled "hearts of palm." The inspectors discovered a white powder in the can which later tested positive for cocaine. The same day, appellant Collins, accompanied by one Robert Reynolds, presented an invoice to one of the inspectors to claim the packages.

Prior to claiming the packages, Collins had telephoned Varig Airlines and had been informed that Customs had placed a "special team hold" on her shipment. She thereafter contacted Customs to inquire about the hold, and upon arriving at the airport to claim the packages, Collins was required to wait one hour until the Customs search was completed. After the search was completed, a Varig Airline agent took the "hearts of palm" package to Collins' car, and as she began to drive away, with Reynolds in the passenger seat, she and Reynolds were arrested by Customs officers. Later that same day, the cocaine contained in several of the "hearts of palm" cans was transferred by Customs officials to the custody of the Drug Enforcement Administration ("DEA").[1]

After the arrest, the Customs officers searched Collins' vehicle and discovered a key and a rental agreement for a safe deposit box which Collins had rented on January 12, 1984,[2] and Collins' checkbook. Collins was then transported by Customs

---

* The Honorable Edward Dean Price, United States District Judge for the Eastern District of California, sitting by designation.

1. The United States Customs Service and the DEA are both statutorily created agencies under the authority of the executive branch. However, the Customs Service is a federal agency in the Department of the Treasury, *See* 19 U.S.C. § 2071 (1982); Reorganization Plan No. 1 of 1965, 5 C.F.R. 213.3105, (1965), *reprinted in* 79 Stat. 1317 (1965), *and in* 19 U.S.C. § 1 annotation, promulgated pursuant to the Reorganization Act of 1949, codified as amended at 5 U.S.C. §§ 901–912 (1982), supp. 2 (1984). The DEA on the other hand, is an agency in the Department of Justice, *see* Reorganization Plan No. 2 of 1973, Section 4, 3A C.F.R. 263 (1973), *reprinted*

*in* 87 Stat. 1091 (1973), *amended by* Act of Mar. 16, 1974, Pub.L. No. 93–253, § 1, 88 Stat. 50 (1974), 28 U.S.C. § 509 annotation, promulgated pursuant to 5 U.S.C. §§ 901–912, which was created to consolidate the antidrug enforcement activities of the federal government into one agency in the Department of Justice. *See* President's Message to Congress transmitting Reorganization Plan, 1973 U.S.Code Cong. & Ad.News, 3554, 3555.

2. The "hearts of palm" boxes neatly fit into the safe deposit box which measured 16" × 16" × 24". In addition, the box was rented at American Vault which had twenty-four hour access, and Collins had paid $735 cash for the box rental.

officers to the airport DEA office to be informed of the charges against her. While she was being transported to the DEA office, Collins made certain spontaneous statements that "[Reynolds] doesn't know what's going on."[3] At the DEA office Collins waived her *Miranda* rights and spoke freely with DEA special agents. Collins discussed her alleged purpose in renting the security box to store files; that Reynolds accompanied her to the airport to help her carry the "hearts of palm" boxes; and she indicated that she was in the fish importing business. However, the special agent testified that Collins did not mention that she intended to use the safe deposit box to store jewelry or a video recorder in addition to files (to which Collins testified at trial).

Collins filed a pretrial motion to suppress the cocaine alleging that the Customs officers did not retain custody of the cocaine and secure it for trial, but rather transferred custody to the DEA, in violation of 19 U.S.C. § 482 (1982). On May 21, 1984, after argument, the district court denied Collins' motion.

In addition, Collins filed a motion to exclude the spontaneous statements which she made to Customs inspectors. She based this motion on the fact that the Government waited until the day prior to trial to file a supplemental trial memorandum setting forth the spontaneous statements. Collins asserted that since the statements were made in the presence of Reynolds, she was prejudiced by not being able to call him as a witness. The court continued the trial one day to allow Collins to locate Reynolds. Further, although the court did not grant Collins' motion to exclude her statements, it did preclude use of the statements from the Government's case-in-chief.

Lastly, Collins objected to the Government's use of her checkbook and bank records. The Government represented that these exhibits would not be introduced in its case-in-chief. Collins renewed her objection and requested that the court prohibit references to her financial records as an attempt to prove past similar crimes as improper under Federal Rules of Evidence 404(b). The court denied Collins' request.

At the close of Collins' case, the Government called rebuttal witnesses, including Customs officers who testified regarding the spontaneous statements made by Collins. After its rebuttal witnesses, the Government moved into evidence Collins' checkbook and bank records without defense objection.

After the jury returned a verdict of guilty, Collins filed a motion for judgment of acquittal and new trial. She raised the issues of the sufficiency of the evidence, admissibility of her checkbook and bank records, and the admissibility of her spontaneous statements. The motions were severally denied by the court on the day of sentencing, and she filed a timely appeal.

## II. ISSUES

Collins presents four issues for our review:

(1) Whether the evidence adduced at trial was sufficient to support the judgment;

(2) Whether Collins was denied due process by the introduction at trial of her voluntary statements to Customs agents;

(3) Whether the district court erred in admitting Collins' bank records and checkbook; and

(4) Whether the evidence seized but not secured by United States Customs officials should have been suppressed pursuant to 19 U.S.C. § 482.

## III. STANDARD OF REVIEW

We review the sufficiency of the evidence to determine whether viewing the evidence in the light most favorable to the Government, a rational trier of fact could conclude that the evidence was adequate and sufficient to prove guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443

---

**3.** Collins testified at trial that the statement she made to Customs officials at the time of her arrest regarding Reynolds was that "He's not involved in this."

U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. Gonzalez-Mares,* 752 F.2d 1485, 1493 (9th Cir. 1985).

Issues two and three above, attack the evidentiary rulings of the district court. "The district court's evidentiary rulings will be upheld on appeal unless the court abused its discretion, *United States v. Merrill,* 746 F.2d 458, 465 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 926, 83 L.Ed.2d 938 (1985), or committed 'manifest error.' *United States v. Marabelles,* 724 F.2d 1374, 1381 (9th Cir.1984)." *United States v. Solomon,* 753 F.2d 1522, 1524 (9th Cir.1985).

The fourth issue which Collins presents, challenges the validity of the transfer of the evidence by Customs officials to the DEA, pursuant to the provisions of the Reorganization Plan No. 2 of 1973, Section 1, 3A C.F.R. 263, 264 (1973), *reprinted in* 87 Stat. 1091 (1973), *amended by* Act of Mar. 16, 1974, Pub.L. No. 93–253, § 1, 88 Stat. 50 (1974);[4] *see also* President's Message to Congress Transmitting Reorganization Plan, 1973 U.S.Code Cong. & Ad.News

3554. Collins alleges that the Reorganization Plan, enacted by the Executive Branch, violates the statutory provisions of 19 U.S.C. § 482[5], which requires Customs Agents to seize and secure any evidence for trial. Whether the Presidential Reorganization Plan conflicts with the statutory language of 19 U.S.C. § 482, presents a question of law which we review *de novo. See United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## IV. DISCUSSION

### A. *Sufficiency of the Evidence*

When viewing the evidence of this case in the light most favorable to the Government, a rational trier of fact could conclude that the evidence was adequate and sufficient to prove Collins' guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. at 318–319, 99 S.Ct. at 2788–2789. We find that the evidence clearly supports Collins' conviction for possession of cocaine with intent to distribute.

---

4. Section 1 of the Reorganization Plan provides in relevant part that "[t]here are hereby transferred from the Secretary of the Treasury, the Department of the Treasury, and any other officer or any agency of the Department of the Treasury, to the Attorney General all intelligence, investigative, and law enforcement functions, vested by law in the Secretary, the Department, officers or agencies which relate to the suppression of illicit traffic in narcotics, dangerous drugs, marihuana, except that the Secretary shall retain, and continue to perform, those functions, to the extent that they relate to searches and seizures of illicit narcotics, dangerous drugs, or marihuana or to the apprehension or detention of persons in connection therewith, at regular inspection locations at ports of entry or anywhere along the land or water borders of the United States: *Provided,* that any illicit narcotics, dangerous drugs, marihuana, or related evidence seized, and any person apprehended or detained by the Secretary or any officer of the Department of the Treasury, pursuant to the authority retained in them by virtue of this section, shall be turned over forthwith to the jurisdiction of the Attorney General; *Provided further,* that nothing in this section shall be construed as limiting in any way any authority vested by law in the Secretary of the Treasury, the Department of the Treasury, or any other

officer or agency of that Department on the effective date of this Plan with respect to contraband other than illicit narcotics, dangerous drugs and marihuana...."

5. 19 U.S.C. § 482 *Search of vehicles and persons.*
    Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in or upon such vehicle, beast, or otherwise, *he shall seize and secure the same for trial.* (Emphasis added.)

Collins argues that her testimony at trial supported a finding of her lack of knowledge of the cocaine, and that she should have been acquitted. Collins testified that she had no knowledge that the shipment of purported hearts of palm contained cocaine, and she argues that her acts were inconsistent with those of a person who was a drug dealer (*i.e.* the fact that she remained at the airport rather than fleeing when she knew that a special Customs team had placed a hold on her shipment, and that she had spoken freely with DEA agents regarding a prior hearts of palm shipment and of her boyfriend in Brazil). However, the Government produced sufficient testimonial and documentary evidence to impeach Collins' testimony and to support her conviction. In addition, "[i]t is not for [this Court] to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (*citing United States v. Manton,* 107 F.2d 834, 839 (2d Cir.1939)).

Nor do we find persuasive, Collins' argument that the facts set out in her testimony would support her acquittal based on her lack of knowledge of the actual contents of the shipment which she received. Mere possession of a substantial quantity of narcotics is sufficient evidence to support a finding that a defendant knowingly possessed the narcotics. *See e.g. United States v. Guzman,* 446 F.2d 1137, 1139 (9th Cir.1971) (evidence of contraband serves as a substantial basis to draw an inference of the defendant's knowledge of possession); *United States v. Sutton,* 446 F.2d 916, 920 (9th Cir.1971) (there was sufficient evidence to establish the element of the defendant's knowledge of the contraband where the defendant was in possession of and driving the automobile in which the contraband was concealed). We find possession of almost eight pounds of cocaine to constitute a substantial quantity. Furthermore, "[t]he question of ... *knowledge* of the concealed contraband is for the trier of fact to answer, not a court of review." *Guzman,* 446 F.2d at 1139.

The Government produced evidence to show that Collins rented a large safe deposit box with twenty-four hour access on the date on which the cocaine arrived. The Government also demonstrated that the safe deposit box was large enough to accommodate the boxes containing the cocaine. In addition, although Collins testified that she rented the box to store files, jewelry and a video camera for an upcoming trip to Brazil, the Government introduced facts to show that Collins had travelled frequently to Brazil and that she had never previously rented a safe deposit box. Furthermore, the video camera had been borrowed for many months and was not even her property.

Even assuming arguendo that the admission of Collins' checkbook and bank records was improper, there was clearly sufficient evidence to support her conviction.

### B. *Admissibility of Spontaneous Statements to Customs Agents*

In applying the abuse of discretion standard to this evidentiary question, this Court cannot reverse the district court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. *Potlatch Corp. v. United States,* 679 F.2d 153, 157 (9th Cir.1982).

Four days prior to trial, the government informed Collins' counsel of the spontaneous statements which she had made to Customs agents. The government had not previously provided Collins with this information when she had filed her discovery motion. On the day prior to trial, the government filed a supplemental trial memorandum, setting forth the spontaneous statements. Collins thereupon filed a motion to exclude these statements, and the district court continued the trial for one day to allow her to locate Reynolds, in whose presence the statements were made. In addition, the court ruled that the govern-

ment could not use the statements in its case-in-chief.

■ Where a party fails to comply with a discovery request, the court may grant a continuance, or prohibit the party from introducing evidence not disclosed. *See* Fed. R.Crim.P. 16(d)(2). The court not only granted Collins a continuance, but it also precluded the government from introducing the statements as part of its case-in-chief. Thus, although the court admitted the statements, it properly did so for the limited purpose of impeachment after Collins testified in a manner inconsistent with her spontaneous statements. *See e.g.* Fed. R.Evid. 806.

The government is required to "permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant ...; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest *in response to interrogation* by any person then known to the defendant to be a government agent...." Fed.R.Crim.P. 16(a)(1)(A) (emphasis added).

■ Collins argues that if counsel had known of the statements attributed to her, he might have approached the defense of the case from a different perspective. She cites *United States v. Padrone*, 406 F.2d 560 (2d Cir.1969) to support this argument. In *Padrone*, the court found that "noncompliance with an order to furnish a copy of a statement made by the defendant is so serious a detriment to the preparation for trial and the defense of serious criminal charges that where it is apparent ... that ... defense strategy may have been determined by the failure to comply, there should be a new trial." *Id.* at 561. This case is clearly distinguishable from the case before us.

In *Padrone*, the statement of the defendant was taken by an Assistant United States Attorney during questioning. *See id.* at 560. However, Collins' statement was not elicited through any form of interrogation, but was a voluntary, spontaneous statement. *See United States v. Von Stoll*, 726 F.2d 584, 588 (9th Cir.1984) (where a defendant's statements are "voluntary and not in response to interrogation, [the court] need not decide whether [the defendant] was prejudiced by the failure to disclose them"). Thus, the error here, if any, does not rise to the level of that present in *Padrone*, and is at most harmless error.

■ We also reject Collins' contention that Reynolds should have been allowed to testify about her statements. First, Collins' counsel admitted that in the three months prior to trial, Reynolds' attorney could not locate him. Second, Collins made no showing of what Reynolds' testimony would be or exactly how his testimony would be any more than cumulative. *See United States v. Hoyos*, 573 F.2d 1111, 1114 (9th Cir.1978).

We do not find that the district court abused its discretion in admitting Collins' statements.

### C. *Admissibility of Checkbook and Bank Records*

Collins contends that the checkbook and bank records were improperly admitted in violation of Fed.R.Evid. 404(b) (evidence of other crimes inadmissible to prove character of a person in order to show that she acted in conformity therewith), and Fed.R. Evid. 403 (probative value versus prejudicial harm).

■ We address first the challenge to the admissibility of this evidence based upon Fed.R.Evid. 404(b). This rule specifically allows admission of evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Since the district court found that there was evidence of large cash deposits during the course of Collins' hearts of palm importation efforts which was relevant to her claims that she was ignorant of the eight pounds of cocaine which she received, the evidence would be properly admissible under the "knowledge" exception to the rule.

■ With respect to Collins' claim that this evidence was "clearly more prejudicial than probative," a district court's decision regarding the probative value versus prejudicial harm of evidence pursuant to Fed.R. Evid. 403 is reviewed for an abuse of discretion. *United States v. Rubio,* 727 F.2d 786, 798 (9th Cir.1983); *United States v. Casanova,* 642 F.2d 300, 301 (9th Cir.) (per curiam), *cert. denied,* 454 U.S. 899, 102 S.Ct. 401, 70 L.Ed.2d 215 (1981); *United States v. Larios,* 640 F.2d 938, 941 (9th Cir.1981).

■ Thus, although Collins claims that the introduction of her checkbook and bank records into evidence is more prejudicial than probative, large amounts of unexplained cash have been held to be "more than only slightly" probative of intent and state of mind to enter upon a narcotics distribution scheme. *United States v. Bernal,* 719 F.2d 1475, 1478 (9th Cir.1983). Furthermore, Collins testified that she was engaged in a legitimate business (fish importation), and that she entered the hearts of palm business with her Brazilian boyfriend as a new business venture. The checkbook and bank records were produced by the government in order to impeach Collins' testimony and to show financial transactions incompatible with the fish importing business. Such use of financial records is legitimate. *See e.g. United States v. Jacobson,* 578 F.2d 863, 866 (10th Cir.1978) (evidence of defendant's drug sales, rebutting defendant's testimony that "he was a respectable automobile dealer ... and that the drug selling was a mistake or an accident; that he was a victim of circumstances," was properly admitted).

The district court did not abuse its discretion in admitting Collins' checkbook and bank records in evidence.

### D. Validity of Customs Officials Transfer of Evidence to the DEA

Collins challenges the transfer by Customs Agents of the cocaine to the DEA in accordance with the provisions of Section 1 of the Reorganization Plan No. 2 of 1973, *see* n. 4, *supra,* alleging that such a transfer violates 19 U.S.C. § 482. *See* n. 3, *supra.* Collins cites no cases in support of her proposition, merely relying on the statute. She argues that since the two are in conflict, the statute overrides, and therefore the transfer of the cocaine, which was done in compliance with the Reorganization Plan, was invalid and the evidence must be suppressed. We disagree.

■ The President has the statutory authority to "examine the organization of all agencies and shall determine what changes in organization are necessary to carry out [Congressional policy]." 5 U.S.C. § 901(d).[6] We find the purpose in creating the DEA, to consolidate the antidrug enforcement activities of the federal government into one agency in the Department of Justice, is within the President's authority under this statute, and not inconsistent with the provisions of 19 U.S.C. § 482.

[11] When interpreting a statutory provision, the "[w]ords used in a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary." *Church of Scientology v. United States Dept. of Justice,* 612 F.2d 417, 420 n. 10 (9th Cir.1979) (citations omitted). In reading 19 U.S.C. § 482, we find the words

**6.** The Congressional policies to be furthered by 5 U.S.C. § 901(d) are set forth in 5 U.S.C. § 901(a):

(1) to promote the better execution of the laws, the more effective management of the executive branch and of its agencies and functions, and the expeditious administration of the public business;

(2) to reduce expenditures and promote economy to the fullest extent consistent with the efficient operation of the Government;

(3) to increase the efficiency of the operations of the Government to the fullest extent practicable;

(4) to group, coordinate, and consolidate agencies and functions of the Government, as nearly as may be, according to major purposes;

(5) to reduce the number of agencies by consolidating those having similar functions under a single head, and to abolish such agencies or functions thereof as may not be necessary for the efficient conduct of the Government; and

(6) to eliminate overlapping and duplication of effort.

of the statute to be clear on their face, and we find no persuasive reason to look any further in interpreting their meaning. *See id.* at 421–22. Thus, the statute requires the Customs official to "seize and secure the [contraband] for trial," and the fact that the official transferred the contraband to the DEA pursuant to the Reorganization Plan, does not countermand the language of the statute. Once the Customs official has seized and secured evidence, the transfer of that evidence from Customs to the DEA, for the purpose of maintaining it for trial, comports with both the statute and the Reorganization Plan.

This Circuit has upheld an investigation conducted by Customs officials which led to a search and seizure, in which the defendant had challenged the investigation, alleging that under the Reorganization Plan, the investigation should have been conducted by the DEA. *See United States v. Harrington,* 681 F.2d 612, 613 (9th Cir. 1982). The district court had excluded the evidence, finding that under the Reorganization Plan, the DEA, rather than Customs should have conducted the search, and in reversing, this court held that "a court should not automatically suppress evidence seized by an officer who, for some technical reason, should not have conducted the search. There must be an exceptional reason, typically the protection of a constitutional right, to invoke the exclusionary rule." *Id.* at 615 (citations omitted).

In addition, other circuits have upheld Customs' involvement in drug investigations and seizures. *See United States v. Stewart,* 700 F.2d 702, 705 (11th Cir.1983) ("Customs retains the responsibility for 'inspection of all persons and goods entering the United States,' and 'interception of contraband being smuggled into the United States.' The effect of the reorganization was only to require customs officials to turn over investigation and enforcement responsibilities to the DEA...."); *United States v. Finch,* 679 F.2d 1083, 1085 (4th Cir.1982) ("The purpose of the [Reorganization] Plan was to better coordinate drug enforcement activity by centralizing control in the DEA, which has primary responsibility for gathering intelligence on drug smuggling and trafficking; Customs, however, retains a supportive role."); *United States v. Carter,* 592 F.2d 402, 405 (7th Cir.1979) (upholding a challenge to DEA agents participating with Customs inspectors in conducting an airport search finding that both agencies have traditionally cooperated and exercised some joint powers over drugs searched for and seized in border searches).

Thus, we hold the action of Customs officials in turning the cocaine over to the DEA, pursuant to the provisions of the Reorganization Plan, does not violate 19 U.S.C. § 482, and the Reorganization Plan is neither inconsistent with nor contrary to the statute.

The conviction is AFFIRMED.