981 F.2d 1260
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jovita GUITRON-HERNANDEZ, Defendant-Appellant.
 No. 92-50093.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 11, 1992.
Decided Dec. 16, 1992.
 
 Before JAMES R. BROWNING, SCHROEDER and FLETCHER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jovita Guitron-Hernandez appeals her jury conviction for importing marijuana in violation of 21 U.S.C. §§ 952 and 960 and possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) on the grounds that the evidence was insufficient to support the verdict; that the district court erred in excluding evidence supposedly implicating a third party in the offense; that she was improperly denied access to the names and addresses of jurors who had served in her first trial which had resulted in a mistrial; and that the district court improperly rejected her proposed jury instruction. As none of these grounds is meritorious, we affirm the conviction.
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 Guitron-Hernandez, a Mexican citizen with an amnesty card permitting her to reside in the United States, entered the San Ysidro port of entry to the United States at approximately 8:00 p.m. on March 20, 1991. She was driving a 1985 Chevrolet pickup truck with an attached camper shell and had five of her seven children, ranging in age from two to fourteen, with her. There was a significant traffic backup at the border, resulting in a fifteen- to twenty-minute delay for crossing.
 
 
 4
 INS inspector Voltaire Velasquez was conducting a primary inspection of the truck when he was interrupted by customs inspector Robert Hood, who told Velasquez to refer the truck to the secondary inspection area. Hood had been situated in a patrol car monitoring the traffic and had noticed the camper shell, which to him appeared suspicious since it seemed to have items stored underneath its top and its exterior lights were lower than usual. Hood had previously found four marijuana loads concealed in camper shells with a similar appearance.
 
 
 5
 At the secondary inspection area, Inspector Hood called upon another customs agent to take Guitron-Hernandez inside the port of entry to be searched. Guitron-Hernandez's children were also escorted away. No drugs, weapons or contraband was found on Guitron-Hernandez; nor did she or her clothing give off the odor of marijuana.
 
 
 6
 Meanwhile, a canine search of the camper shell revealed the presence of marijuana in the camper shell roof. Eventually agents extracted 329.4 pounds of marijuana from the roof compartment.
 
 
 7
 After the discovery of the marijuana, Guitron-Hernandez was arrested and asked biographical questions. She stated that she lived in the Garden Grove, California area with the man who was the father of her youngest child. After being informed of her constitutional rights in Spanish, she stated that her "husband" owned the camper.
 
 
 8
 A registration check conducted prior to the interview revealed that neither Guitron-Hernandez nor the man with whom she lived was the registered owner of the vehicle. Asked again about the ownership of the truck, Guitron-Hernandez changed her story. Now she stated that she had been soliciting rides in an area where street vendors sold goods to traffic waiting to enter the United States. A man had approached her; he asked her to take his truck across for him since he did not have the papers to cross the border legally. He would meet Guitron-Hernandez at a gas station on the other side of the border and give her and her children a ride to Garden Grove. He told her if anyone asked questions to say she had purchased the truck from a "gringo" (white man). Guitron-Hernandez explained that she had hitched a ride into Mexico to buy clothes for her children because they were cheaper there. During the interrogation, Guitron-Hernandez appeared visibly depressed and sullen.
 
 
 9
 Subsequently, Guitron-Hernandez agreed to attempt a delivery of the truck at the gas station across the border. The attempted delivery took place some four hours after Guitron-Hernandez had entered the San Ysidro port. Guitron-Hernandez waited at the Texaco for about an hour and a half in the rain. Although the surveilling agents observed three males watching the gas station from across the street and several cars which slowed down as they passed, no one approached Guitron-Hernandez to claim the camper.
 
 
 10
 Agents attempted unsuccessfully to locate the registered owner of the vehicle, Uriel Rios-Rios, at the address listed with the Department of Motor Vehicles, 922 Sultana Avenue in Ontario, California. The investigation did, however, turn up the fact that a year prior to Guitron-Hernandez's arrest, a man named Ernesto Rios-Nunez had been arrested at the El Paso port of entry with eighty-six pounds of marijuana concealed in a van which was registered to the 922 Sultana Avenue address. Although Guitron-Hernandez characterizes the address as a "fake," the government notes that it is an actual residence, though Uriel Rios-Rios could not be located there.
 
 
 11
 A federal grand jury returned an indictment on April 3, 1991, charging Guitron-Hernandez with one count of importing marijuana in violation of 21 U.S.C. §§ 952 and 960, and one count of possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Guitron-Hernandez's first trial in June 1991 resulted in a mistrial because the jury was unable to reach a verdict. On August 13, 1991, after a second jury trial, Guitron-Hernandez was found guilty of both counts. She was sentenced on January 21, 1992 to a term of imprisonment of sixty months, three years probation, and was assessed a $100 special assessment.
 
 
 12
 Guitron-Hernandez filed a timely notice of appeal.
 
 DISCUSSION
 I. SUFFICIENCY OF THE EVIDENCE
 
 13
 There is sufficient evidence to sustain a conviction if, "viewing the evidence in the light most favorable to the government and respecting the jury's ability to judge the credibility of the witnesses, resolve factual conflicts, and draw inferences, a rational jury could have found the elements of the crime beyond a reasonable doubt." United States v. Feldman, 853 F.2d 648, 654 (9th Cir.1988), cert. denied, 489 U.S. 1030 (1989).
 
 
 14
 Guitron-Hernandez contends that the government failed to prove that she had knowledge of the marijuana hidden in the camper shell and that she was convicted merely because she happened to be the driver of the truck. She cites United States v. Penagos, 823 F.2d 346, 350 (9th Cir.1987), and other cases for the proposition that a person may not be convicted of illegal possession unless she knows the contraband is present and is capable of exercising dominion and control over it.
 
 
 15
 Here, Guitron-Hernandez exercised dominion and control over the marijuana because she was the sole adult occupant and driver of the vehicle in which it was discovered. The size of the stash suggests that she was aware of its existence; it is unlikely a drug operation would have entrusted an unknowing individual with such a valuable cargo. Moreover, the fact that Guitron-Hernandez changed the story she told to the arresting agents suggests that she was a knowing participant in the smuggling operation. The Ninth Circuit has held that "[m]ere possession of a substantial quantity of narcotics is sufficient evidence to support a finding that a defendant knowingly possessed the narcotics." United States v. Collins, 764 F.2d 647, 652 (9th Cir.1985). Because the stash was substantial and Guitron-Hernandez's contradictory statements cast doubt on her efforts to exculpate herself, we find there was sufficient evidence to support the jury's verdict.
 
 II. EXCLUSION OF EVIDENCE
 
 16
 Guitron-Hernandez argues that she should have been permitted to cross-examine government agents concerning the address of the registered owner of the camper. According to Guitron-Hernandez, the fact that a different vehicle containing marijuana had been traced to the same address on a prior occasion would have bolstered her defense that she was a blind participant in the smuggling operation. The district court ruled the testimony inadmissible on the grounds that it was irrelevant, that it would cause confusion, and that it constituted an improper use of extrinsic act evidence.
 
 
 17
 Under Fed.R.Evid. 402, evidence which is not relevant is not admissible. A district court's ruling on the relevance of evidence is reviewed for an abuse of discretion. United States v. Schaff, 948 F.2d 501, 505 (9th Cir.1991). Here, the fact that a different vehicle registered to the same address attempted to cross the border with a load of marijuana does not shed any light on Guitron-Hernandez's state of mind. There is no showing that the man previously arrested was a "blind mule"; in fact, the man was the registered owner of the van he was driving. Nor is there any indication that Guitron-Hernandez was familiar with him or his activities. Because the testimony Guitron-Hernandez sought to introduce was irrelevant to the issue at trial, we need not reach the other bases for the district court's correct ruling that the evidence was inadmissible.
 
 III. ACCESS TO JURORS' NAMES AND ADDRESSES
 
 18
 Guitron-Hernandez's first trial resulted in a mistrial when the jury was unable to reach a verdict. Prior to retrial, Guitron-Hernandez's counsel requested the addresses and phone numbers of the members of the original jury so he could talk to them. The district court, citing court policy prohibiting the release of such information, denied the request.
 
 
 19
 Since Guitron-Hernandez's trial counsel had an out-of-town engagement, she was represented by stand-in counsel from the same office during the period that the first jury was deliberating. Although it is not mentioned in Guitron-Hernandez's brief on appeal, her stand-in counsel, who had handled the motion for a mistrial, was allowed the opportunity by the district court to interview the jurors after they were discharged, just as the prosecutor was. The government's brief points out that the substitute lawyer did apparently succeed in discussing the case with at least one juror, and listened to the prosecutor's conversations with several others. In addition, the record reflects that an investigator working on behalf of the defense spoke with two or three of the jurors at the time they were discharged and managed to contact a number of others after they had gone home. Under these circumstances, there is no basis for Guitron-Hernandez's claim that there was in an imbalance of information regarding the first jury available to the parties. Moreover, she has not cited any authority in support of her position that a criminal defendant is entitled to jurors' addresses and phone numbers.
 
 
 20
 The decision to allow attorneys to interview jurors after a trial lies within the sound discretion of the trial judge. Wilkerson v. Johnson, 699 F.2d 325, 330 (6th Cir.1983). The district court did not abuse its discretion in this case.
 
 IV. JURY INSTRUCTIONS
 
 21
 At trial, Guitron-Hernandez proposed the following jury instruction on circumstantial evidence:
 
 
 22
 While circumstantial evidence may support a conviction, it must be sufficient to exclude every hypothesis except that of guilt. When considering a circumstantial evidence case, if two or more alternative reasonable inferences can be drawn from the evidence, one of which points to the defendant's innocence, you must adopt the inference which points to the defendant's innocence. A finding of guilt may not be based upon circumstantial evidence unless the true circumstances are not only consistent with the theory that the defendant is guilty of a crime, but cannot be reconciled with any other rational conclusion.
 
 
 23
 In other words, if two conclusions can reasonably be drawn from the evidence, one of innocence and one of guilt, you must adopt the conclusion of innocence.
 
 
 24
 (Appellant's Br. at 28-29.) According to Guitron-Hernandez, the district court rejected this instruction on the ground that it was "the same as the Ninth Circuit instruction on reasonable doubt." (Id. at 29.) In fact, the district court ruled that the proposed instruction was covered by the Ninth Circuit standard instructions on reasonable doubt and circumstantial evidence that it was going to give.
 
 
 25
 We review a trial court's formulation of jury instructions for an abuse of discretion. United States v. Johnson, 956 F.2d 197, 199 (9th Cir.1992). The district court did not abuse its discretion in choosing to give the Ninth Circuit model jury instructions defining reasonable doubt and circumstantial evidence rather than Guitron-Hernandez's proposed instruction. See United States v. Grayson, 597 F.2d 1225, 1230 (9th Cir.), cert. denied, 444 U.S. 873, and cert. denied, 444 U.S. 875 (1979) (holding similar instruction properly refused because covered by instruction on reasonable doubt). Moreover, the instruction offered by the defendant did not accurately state the law. See United States v. Nelson, 419 F.2d 1237, 1240-41 (9th Cir.1969).
 
 
 26
 The conviction is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3