990 F.2d 1264
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alberto NEGRON, Defendant-Appellant.
 No. 90-50468.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 7, 1992.
Decided April 2, 1993.
 
 1
 Before: BROWNING and FARRIS, Circuit Judges, and MACBRIDE, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Alberto Negron appeals his conviction for possession and distribution of cocaine on the grounds that the evidence was insufficient to prove Negron's knowledge of the cocaine, and that the admission of a tape recorded statement of a non-testifying codefendant violated the hearsay rule and the Confrontation Clause. In addition, Negron claims his Count One conviction for possession of cocaine with intent to distribute should be reversed because it merged with the offense of distribution charged in Count Two.
 
 BACKGROUND
 
 4
 Negron was one of four codefendants charged with possession and distribution of cocaine. At trial the government presented evidence that police, using an informer, purchased cocaine from codefendant DiCesare. Negron did not appear to have any role in this transaction. The police did not immediately arrest DiCesare; instead the set up surveillance.
 
 
 5
 Government witnesses testified that on September 12, 1989, DiCesare parked a rented Lincoln on Orlando Street in Beverly Hills. Officers testified that DiCesare was then picked up by codefendant Wittenberg. Some officers followed DiCesare and Wittenberg while others continued to watch the parked Lincoln.
 
 
 6
 Sometime after DiCesare departed, one or more officers observed two men in a pickup truck parked nearby. Officers testified that while sitting in the pickup truck, the men repeatedly looked in their mirrors and up and down the street. After approximately ten or fifteen minutes, one of the two men, later identified as Alberto Negron, exited the truck, approached the Lincoln, and looked inside. Negron then got into the Lincoln and drove away. The pickup truck followed. Police followed both vehicles. The officers testified that they observed the Lincoln and the pickup truck engage in such activities as pulling over to the side of the road, looking frequently into their rearview mirrors, stopping and backing up for no apparent reason, and starting up again very quickly. Over objection, the officers identified these activities as countersurveillance maneuvers.
 
 
 7
 The officers testified that both the pickup truck and the Lincoln drove into a narrow alley, at which point police on the ground lost visual contact. However, an officer equipped with powerful binoculars and situated in an airplane overhead testified that he too was tracking the vehicles. The officer testified that after the vehicles stopped, the man in the pickup truck gave two packages to the driver of the Lincoln, after which both cars exited the alley. Officers on the ground testified that the man in the Lincoln drove it around the block a few more times, parked the Lincoln a short distance from where it had been parked earlier, exited the car, and went to the corner where he made a phone call. The driver of the Lincoln was again identified as Negron. Officers observed the pickup truck as it was driven to the phone booth to pick up Negron. Police later stopped the pickup truck and arrested both occupants, codefendants Negron and Torres.
 
 
 8
 Police continued surveilling the Lincoln. Police testified to watching as codefendant Wittenberg dropped codefendant DiCesare off at the Lincoln. When police attempted to stop DiCesare from driving away, a high speed chase ensued. When the officers finally stopped DiCesare, no drugs were found in the car. However, the officer conducting aerial surveillance observed DiCesare discard the packages into a trash dumpster during the chase. Drugs were later recovered from that trash dumpster.
 
 
 9
 Experts testified that the packages found in the trash dumpster contained eleven kilograms of cocaine with a street value of approximately $2,000,000. Negron's fingerprints were found on the outside of the plastic bag in which the cocaine was found. Police testified to finding a piece of paper in Negron's shirt pocket containing notations in Spanish such as "500--Where are you?"; "504--In the car"; "511--Pick up the car"; "513--I don't find the car"; "518--Turn, its cancelled" and "520--They're following me". Additionally, when Negron was arrested, he held a piece of paper with the words "Orlando and Rosewood" written on it, the approximate street location where DiCesare had parked the Lincoln. The pickup truck contained a two-way UHF radio. Officers also found pagers on codefendants Negron and Torres. An inventory search of the pickup revealed approximately a dozen empty paper and plastic grocery bags which were identical in type and printing to some of the bags that contained the cocaine.
 
 DISCUSSION
 I. SUFFICIENCY OF THE EVIDENCE
 
 10
 Negron argues that the evidence was insufficient to convict him of possession of cocaine with intent to distribute and distribution of cocaine, both in violation of 21 U.S.C. § 841(a)(1).
 
 A. Standard of Review
 
 11
 Evidence is sufficient to support a conviction if " 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original). Circumstantial evidence and inferences drawn therefrom may suffice to sustain a conviction. United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.1992), cert. denied, 113 S.Ct. 258. Mere suspicion or speculation is insufficient. United States v. Stauffer, 922 F.2d 508, 521 (9th Cir.1990). We "must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." United States v. Goode, 814 F.2d 1353, 1355 (9th Cir.1987); United States v. Ramos, 558 F.2d 545, 546 (9th Cir.1977).
 
 B. Merits
 
 12
 At trial, the government presented evidence that Negron participated in countersurveillance activities while driving the Lincoln. Police watched as Negron and another man transferred packages from the pickup truck to the Lincoln in a narrow alley. The packages were later found to contain eleven kilograms of cocaine. Negron's fingerprints were found on the outside bag containing the cocaine. The vehicle Negron was driving contained a two-way UHF radio. A piece of paper containing coded paper notations was found in Negron's shirt pocket. Negron held a piece of paper that indicated the location where DiCesare had parked the Lincoln.
 
 
 13
 Negron admits, as he must, that the proof is sufficient under Jackson, 443 U.S. 307, to show that he transported packages containing some kind of contraband. Negron claims, however, that the government failed to show that Negron knew that the packages contained a controlled substance. He argues that mere association with criminals, even during some criminal activity, is insufficient to support a conviction. United States v. Penagos, 823 F.2d 346 (9th Cir.1987); United States v. Lopez, 625 F.2d 889 (9th Cir.1980).
 
 
 14
 In United States v. Collins, 764 F.2d 647 (9th Cir.1985), the defendant claimed to have no actual knowledge of the existence of almost eight pounds of cocaine in a shipment of cans of hearts of palm intercepted by the U.S. Drug Enforcement Agency. The court held that "[m]ere possession of a substantial quantity of narcotics is sufficient evidence to support a finding that a defendant knowingly possessed the narcotics." Id. at 652.
 
 
 15
 In the instant case, Negron possessed 11 kilograms (24.3 pounds) of cocaine. Under Collins, this evidence is sufficient to support Negron's conviction.
 
 II. ADMISSION OF THE TAPED STATEMENT
 
 16
 Negron also claims the court erred by admitting the tape recorded statement of codefendant DiCesare, who did not testify at trial. Before trial, codefendant Wittenberg secretly recorded a telephone conversation with DiCesare while DiCesare was in custody and Wittenberg was out on bail. The statement at issue was made in response to Wittenberg's request to DiCesare for an affidavit exculpating Wittenberg. Wittenberg told DiCesare that "maybe if this affidavit gets done or written up, etc., um that'll get me out of here too, you know, or whatever, but...." DiCesare's response was: "You have to get out anyway from these people, you didn't do nothing, but we can start with the ... I think this is the wrongest way we can [sic]...."
 
 
 17
 Wittenberg announced in advance of trial his intention to use DiCesare's statement to substantiate his claim of innocence. Because he intended to introduce DiCesare's out-of-court statement, Wittenberg moved for severance. Negron joined Wittenberg's motion. Judge Rafeedie, who heard the pretrial motions, denied the severance motion and ruled that DiCesare's statement did not violate the Confrontation Clause because the statement did not incriminate Negron.
 
 
 18
 At trial, Wittenberg testified that he understood DiCesare's reference to "these people" to mean himself, codefendant Torres, and the third defendant in the case. He did not explicitly identify Negron as the "third defendant." Negron's counsel objected to the admission of the tape but did not object to Wittenberg's testimony about the identities of those referred to in DiCesare's statement.
 
 
 19
 Negron does not claim Judge Rafeedie erred in denying the motion for severance. Instead, Negron claims the trial court erred in allowing the statement because 1) admission of the statement was a violation of the Confrontation Clause, and 2) the statement was inadmissible hearsay.
 
 A. The Confrontation Clause Violation
 
 20
 Negron claims that admission of DiCesare's statement was a violation of Negron's Sixth Amendment right of confrontation. The government concedes the violation of the Confrontation Clause under Bruton v. United States, 391 U.S. 123 (1968), but argues that the error was harmless. The government's concession notwithstanding, we have some doubt about whether the Constitution was violated in this case. See United States v. Vasquez, 874 F.2d 1515, 1518 (11th Cir.1989), cert. denied, 493 U.S. 1046 (1990). Nevertheless, we assume for purposes of this appeal that Bruton error occurred.
 
 
 21
 A Confrontation Clause violation does not require reversal if the error was harmless beyond a reasonable doubt. Toolate v. Borg, 828 F.2d 571, 575 (9th Cir.1987); United States v. Magana-Olvera, 917 F.2d 401, 409 (9th Cir.1990). The government carries the burden of proof. Collazo v. Estelle, 940 F.2d 411, 424 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 870 (1992).
 
 
 22
 The government misapprehends the nature of that burden. Misled perhaps by the wording of Magana-Olvera, the government simply refers the court to the sufficiency of the evidence standard. See Magana-Olvera, 917 F.2d at 409 (the test is "whether, in the absence of [the inadmissible] hearsay, there was sufficient evidence to convict"). The tests for sufficiency of the evidence and Constitutional error, however, are different. Compare Bishop, 959 F.2d at 929 (quoting Jackson, 443 U.S. at 319), with Collazo, 940 F.2d at 424. In Collazo, we stated that:
 
 
 23
 [t]he test for determining whether an error of Constitutional dimension was harmless comes from Chapman v. California, 386 U.S. 18 ... (1967). The Chapman test for excusing such error is whether the state has proved "beyond a reasonable doubt that the error complained of did not contribute to the ensuing verdict obtained." Id. at 24.... "To say that an error did not 'contribute' to the verdict is not, of course, to say that the jury was totally unaware of that feature of the trial.... To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." Yates v. Evatt, --- U.S. ----, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991).
 
 
 24
 Collazo, 940 F.2d at 424.
 
 
 25
 In the instant case, the briefs, physical evidence, and the trial transcripts confirm that the evidence presented by the government against Negron is overwhelming. Government eyewitnesses gave extensive detailed testimony inculpating Negron. DiCesare's statement is of questionable importance in light of the voluminous testimony and other evidence presented against Negron. As Negron's counsel conceded, DiCesare's statement on the tape was "ambiguous and hardly 'solidly' inculpatory". Appellant's Opening Brief at 12. Moreover, DiCesare's statement was used only briefly at trial in the context of exculpating Wittenberg. The defense did not refer to DiCesare's statement or Wittenberg's related testimony in closing argument. Nor did the prosecution mention this evidence in either opening or rebuttal summation. Because DiCesare's statement was unimportant in relation to the other evidence presented to the jury, see Yates, 111 S.Ct. at 1893, the Bruton error was harmless.
 
 B. The Evidentiary Error
 
 26
 Negron argues that DiCesare's statement was inadmissible hearsay, a proposition conceded by the government. A nonconstitutional evidentiary error warrants reversal only where the error more likely than not affected the verdict. United States v. Yin, 935 F.2d 990, 994 (9th Cir.1991). Under Magana-Olvera, 917 F.2d at 409, however, the trial court's evidentiary ruling necessarily was of constitutional dimension. Thus, the Collazo test is applicable. As discussed in the preceding section, the admission of DiCesare's statement was harmless even under that relatively stringent standard.
 
 III. MERGER
 
 27
 Negron next argues that his conviction on Count One for possession of cocaine with intent to distribute must be reversed because that offense merged with the offense of distribution charged in Count Two. He is partially correct: Although the two offenses merge, see United States v. Ray, 731 F.2d 1361, 1368 (9th Cir.1984); United States v. Oropeza, 564 F.2d 316, 323-24 (9th Cir.1977), cert. denied 434 U.S. 1080 (1978), reversal is not required on either count.
 
 
 28
 In United States v. Palafox, 764 F.2d 558 (9th Cir.1985) (en banc), this court ruled that although a defendant can be convicted for possession with intent to distribute narcotics and for distribution of the same narcotics, only one punishment should be imposed. Id. at 562. The court resolved the apparent tension between multiple convictions and a single sentence by instructing the district court to stay the entry of judgment of conviction and the imposition of sentence on one count, while permitting the entry of judgment and imposition of sentence on the other count. Id. at 564. The court further ordered that the stay would become permanent upon completion of the sentence not stayed. Id.
 
 
 29
 Palafox is dispositive. We therefore remand with instructions to the district court to vacate and stay the entry of judgment and the imposition of sentence on one count, the stay to become permanent upon completion of the sentence on the remaining count. The judgment is otherwise affirmed.
 
 
 
 *
 Honorable Thomas J. MacBride, Senior United States District Judge for the Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3