15 F.3d 1093
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ernesto PIMENTEL, Sr., Ernesto Pimentel, Jr., Defendants-Appellants.
 Nos. 93-50073, 93-50074.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 7, 1993.
Filed Dec. 20, 1993
Decided Dec. 30, 1993.
 
 Before: TANG, D.W. NELSON, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ernesto Pimentel Sr. and Ernesto Pimentel Jr. were convicted of conspiracy to import marijuana, in violation of 21 U.S.C. Secs. 952, 960, and 963, and conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. Secs. 841(a)(1) and 846. We affirm.
 
 DISCUSSION
 
 3
 ERNESTO PIMENTEL SR.
 
 I.
 
 4
 There is sufficient evidence to support a conviction if, "reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 5
 The evidence at trial showed that Pimentel Sr. was directly involved in the conspiracy to import and distribute marijuana. The government introduced this evidence through the testimony of cooperating coconspirators Edmundo Cervantes-Coronel ("Cervantes"), Jorge Iniguez Martinez ("Iniguez"), Douglas Gurley ("Gurley"), and Peter Quandt ("Quandt").
 
 
 6
 Pimentel Sr. argues that there is insufficient evidence linking him to the March 5, 1991 load due to inconsistencies in Gurley's testimony, and other testimony which indicates he was not involved in that transaction. However, it is within the jury's province to weigh the evidence and determine the credibility of witnesses. See United States v. Collins, 764 F.2d 647, 652 (9th Cir.1985).
 
 
 7
 Moreover, Pimentel Sr. does not dispute the existence of the conspiracy, nor his involvement in the December 5 transaction. Evidence of a slight connection to a conspiracy is sufficient to convict a defendant of knowingly participating in an established conspiracy. See United States v. Aichele, 941 F.2d 761, 763 (9th Cir.1991). There was sufficient evidence to sustain Pimentel Sr.'s convictions for conspiracy to import and to possess with intent to distribute marijuana.
 
 II.
 
 8
 Pimentel Sr. next argues that the government was erroneously allowed to present testimony under Fed.R.Evid. 404(b), that Gurley and Cervantes were involved in drug transactions with Pimentel Sr. prior to 1991. However, this evidence is not Rule 404(b) "other crimes" evidence because it is evidence of the existence of the charged conspiracy. See United States v. Lai, 944 F.2d 1434, 1439 (9th Cir.1991), cert. denied, 112 S.Ct. 947 (1992). It was material in that the indictment did not specify a beginning date to the conspiracy. Id.
 
 
 9
 Pimentel Sr. also objects that the district court erred by allowing evidence of his homes and luxury vehicles. The district court did not abuse its discretion in admitting this evidence where other evidence showed that Pimentel Sr. was employed only part time and Pimentel Jr. was unemployed. See United States v. Miguel, 952 F.2d 285, 289 (9th Cir.1991) ("evidence of sudden or unexplained wealth is admissible in drug conspiracy trials if it creates a reasonable inference that the unexplained wealth came from the drug conspiracy").
 
 
 10
 Pimentel Sr. also argues that the district court erroneously allowed Agent Davis to testify about Hector Ramon. On cross-examination, Gurley admitted he lied to the DEA regarding Cervantes' role in the conspiracy in order to hide Ramon's involvement. Davis confirmed in his testimony that Gurley told him that when Gurley met Ramon, Ramon said he would kill Gurley if Gurley ever "squealed" on him or his people. The statement regarding Ramon's death threats was admissible under Fed.R.Evid. 801(d)(1)(B) as a prior consistent statement.
 
 
 11
 Because none of this evidence was erroneously admitted, Pimentel Sr.'s due process rights were not violated by any cumulative effect of the evidentiary rulings.
 
 III.
 
 12
 Pimentel Sr. argues that the government failed to provide the address of "T.R" or "T. Rogers," a possible witness, in violation of Brady v. Maryland, 373 U.S. 83 (1963). However, there was no Brady violation shown where defense counsel stated that she had a phone number and a possible address for T.R., and that her investigator had spoken with him on the phone.
 
 
 13
 Pimentel also claims that the government did not turn over Quandt's debriefings and rough notes regarding Gurley's debriefings. Government counsel advised the district court that no reports or debriefings regarding Quandt existed, and the district court found that all material pertaining to Quandt had been provided to Pimentel. Moreover, the court ordered the government to preserve any rough notes regarding Gurley's debriefings, Agent Davis testified that he did not take notes of his interview with Gurley, and Agent Hughes (the author of the report of Gurley's debriefing) made no mention of notes. Pimentel Sr. cites no evidence that such notes existed, and we thus find no Brady violation.
 
 IV.
 
 14
 The district court's denial of Pimentel Sr.'s motion for foreign depositions of Pasqual and Joel Fonseca is reviewed for an abuse of discretion. United States v. Hernandez-Escarsega, 886 F.2d 1560, 1569 (9th Cir.1989), cert. denied, 497 U.S. 1003 (1990).
 
 
 15
 Pasqual and Joel Fonseca were both fugitives after jumping bail. While fugitive status is not a complete bar to deposition under Fed.R.Crim.P. 15(a), "the facts of each case must be separately considered to determine whether the exceptional circumstances contemplated by Rule 15(a) exist, justifying the deposition of even those individuals who consciously hold themselves beyond the reach of the law." Id., citing People of the Territory of Guam v. Ngirangas, 806 F.2d 895, 897 (9th Cir.1986).
 
 
 16
 While Pimentel Sr. asserts that the Fonsecas would testify that Sr. was not involved in the March 5 load, Pimentel Sr. failed to show that the Fonseca brothers would waive their right to remain silent and testify regarding their knowledge of and role in the conspiracy. Pimentel Sr. has not demonstrated the existence of "exceptional circumstances." The district court did not abuse its discretion in denying the motion.
 
 V.
 
 17
 The denial of Pimentel Sr.'s writ of habeas corpus ad testificandum to produce Michael Askvig for trial is reviewed for an abuse of discretion. United States v. Smith, 924 F.2d 889, 896 (9th Cir.1991). To obtain a writ, a defendant must comply with Fed.R.Crim.P. 17(b) by demonstrating "that the presence of the witness is necessary to an adequate defense." Id.
 
 
 18
 Because Pimentel Sr. could have examined Douglas Gurley about the recorded conversation in which Askvig and Gurley listed "all the large marijuana dealers that were known to the State of California," Askvig's testimony was not "necessary to an adequate defense," and the difficulties in securing Askvig's testimony from Oklahoma outweighed "the actual need for such testimony." Id. The denial of the writ was not an abuse of discretion.
 
 VI.
 
 19
 Pimentel Sr. next argues that he did not receive a jury of his peers. A three part test is employed to determine whether a jury selection process passes constitutional muster: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." United States v. Sanchez-Lopez, 879 F.2d 541, 547 (9th Cir.1989). Pimentel Sr. has not demonstrated that Hispanics were not fairly represented on the venire, nor that any underrepresentation was due to systematic exclusion of Hispanics in the jury-selection process.
 
 
 20
 Pimentel Sr. further argues that as of January 1, 1993, district courts are now required to use a larger base from which to draw the jury pool. See 28 U.S.C. Secs. 1861-1867 (Appendix A). However, the fact that the jury pool is now drawn from a larger geographic area does nothing to demonstrate that the jury panel pulled in Pimentel's case violated his constitutional rights.
 
 
 21
 Moreover, Pimentel Sr. did not challenge the jury panel composition until his motion for new trial, which was not filed within seven days of the verdict. See Fed.R.Crim.P. 33 (motion for new trial based on grounds other than new evidence shall be made within seven days after the verdict of guilty). The motion was properly denied as untimely by the district court.
 
 VII.
 
 22
 Pimentel Sr. was sentenced to serve 108 months in prison. Pimentel Sr. first argues that the district court erred by including the amount of marijuana in the March 5 load. The district court was not clearly erroneous in concluding that Pimentel Sr. was involved in this transaction: both Gurley and Iniguez testified that Pimentel Sr. provided the storage place for the second load in Tijuana and met with them and Cervantes in Tijuana. Although there was testimony to the contrary, the government established by a preponderance of the evidence that Pimentel Sr. was involved in the March 5 transaction.
 
 
 23
 Pimentel Sr. next challenges the district court's finding that he was a manager or supervisor of a criminal activity involving five or more participants, which is reviewed for clear error. See United States v. Monroe, 943 F.2d 1007, 1019 (9th Cir.1991), cert. denied, 112 S.Ct. 1585 (1992). To receive an adjustment under U.S.S.G. Sec. 3B1.1(b), the defendant must have managed or supervised at least one other participant. United States v. Helmy, 951 F.2d 988, 997 (9th Cir.), cert. denied, 112 S.Ct. 2287 (1992).
 
 
 24
 The evidence at trial showed that Pimentel Sr., Pimentel Jr., Iniguez, Cervantes, Argueta, Gurley, Quandt, and Jose, Joel and Pasqual Fonseca were involved in the conspiracy, and that Pimentel Sr. supervised at least one other person. The district court's finding was not clearly erroneous.
 
 
 25
 Pimentel Sr. finally argues that the $15,000 fine was based on the court's erroneous conclusion that Sr. possessed undisclosed assets. However, Pimentel Sr. did not challenge the fine in the district court, and as a general rule this court "will not consider an issue raised for the first time on appeal." United States v. Mondello, 927 F.2d 1463, 1468 (9th Cir.1991).
 
 
 26
 ERNESTO PIMENTEL JR.
 
 I.
 
 27
 Pimentel Jr. argues only that there was a fatal variance between the indictment and the proof at trial. The question of variance is essentially one of whether sufficient evidence establishes the existence of the single conspiracy charged. United States v. Kenny, 645 F.2d 1323, 1335 (9th Cir.), cert. denied, 452 U.S. 920 (1981). A verdict will not be disturbed unless we can conclude "that no rational trier of fact could have found a single conspiracy on this evidence." Id. (emphasis in original).
 
 
 28
 A single conspiracy exists where there is "one overall agreement to perform various functions to achieve the objectives of the conspiracy." United States v. Patterson, 819 F.2d 1495, 1502 (9th Cir.1987) (internal quotation omitted). The relevant factors include "the nature of the scheme, the identity of the participants, the quality, frequency and duration of each conspirator's transactions, and the commonality of times and goals." United States v. Gordon, 844 F.2d 1397, 1401 (9th Cir.1988).
 
 
 29
 The evidence at trial clearly showed that there was one conspiracy operating. Cervantes, Iniguez, Gurley, the Fonseca brothers, and Pimentel Sr. were involved in both transactions, although Pimentel Jr. was involved only in the first load.[1] Further, the second shipment was conducted using similar methods: the transport of the marijuana by Cervantes and Iniguez, its storage by Pimentel Sr. in Tijuana, and its shipment into the United States in a secret compartment in a truck belonging to the Fonseca brothers. See United States v. Zemek, 634 F.2d 1159, 1167-69 (9th Cir.1980), cert. denied, 450 U.S. 916 (1981) (illegal activities were conducted with similar methods, had overlapping participants with continuing relationships organized in a hierarchical pattern, and the events were united in time and place). Separate acts at separate times should not be confused with separate conspiracies. See United States v. Smith, 790 F.2d 789, 795 (9th Cir.1986).
 
 
 30
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At oral argument, a question was raised whether Pimentel Jr. was sentenced only on the basis of his participation in the first load. The district court gave two alternative reasons for Pimentel Jr.'s sentence. First, he found that if Jr. was sentenced on both transactions (a total of 600 kgs.), he would be entitled to a reduction for having a minor role in the overall conspiracy. This calculation resulted in a base offense level of 28, and a reduction to an offense level of 26. Alternatively, the court found that if Jr. was sentenced only on the first transaction (200 kgs.), Jr.'s base offense level would be 26, but he would not receive a reduction for having a minor role in the offense. Under both calculations, Pimentel Jr.'s guideline range was 70-87 months. Pimentel Jr. was sentenced to 70 months. [Sentencing transcript, pp. 13-14.] There was no error in his sentence. Moreover, Pimentel Jr. does not appeal his sentence